1

2                                                          Hon. Ricardo S. Martinez

3

4

5

6                    UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

7   THOSE CERTAIN UNDERWRITERS AT
    LLOYD'S OF LONDON and LONDON
8   MARKET INSURERS, subscribing to the           No. 11-cv-02111
    Policy with the Unique Market Reference
9   B1093C080906,                                 DECLARATION OF DEBORAH A.
                                                  SEVERSON IN SUPPORT OF
10              Plaintiff,                         DEFENDANTS' EUGENE HORTON,
                                                  LLC AND EUGENE HORTON'S FRCP
11         vs.                                    12(B)(1) MOTION TO DISMISS

12  EUGENE HORTON, LLC, a Washington             NOTE ON MOTION CALENDAR:
    limited liability corporation; EUGENE        FEBRUARY 24, 2012
13  HORTON, and individual; and OAMPS
    SPECIAL RISKS, LTD., a Lloyd's broker,

14              Defendants.

15

16         I, DEBORAH A. SEVERSON, declare and say as follows:

17         1.    I am an Associate of Lee Smart, P.S., Inc., attorneys of record for Defendants

18  Eugene Horton, LLC and Eugene Horton in the above-captioned matter.  I am over 18 years old

19  and otherwise competent to testify.

20         2.    I make this Declaration based on my personal knowledge and upon review of

21  the file which is kept in the ordinary course of business.

22
           3.    Attached to this Declaration as **Exhibit 1** is a certified copy of Defendants
23
    Underwriters' Answer, Affirmative Defenses and Counterclaims to Third Amended Complaint
24
    filed in Northcoast *Yachts, Inc. and Stephen Yadvish v. Sea-Mountain Insurance Brokers, Inc.,*
25

SEVERSON DECL. IN SUPPORT OF
DEFENDANTS' HORTON FRCP 12(B)(1)                    **L E E · S M A R T**
MOTION TO DISMISS - 1                    _____
11-cv-02111                              P.S., Inc. · Pacific Northwest Law Offices
5398205.doc                              1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
                                         Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax  206.624.5944

*et al.*, Pierce County Superior Court cause no. 10-2-08513-6.

4.    Attached to this Declaration as **Exhibit 2** is a certified copy of Defendants Underwriters' Opposition to Defendant Horton's Motion for Partial Summary Judgment filed in *Northcoast Yachts, Inc. and Stephen Yadvish v. Sea-Mountain Insurance Brokers, Inc., et al.*, Pierce County Superior Court cause no. 10-2-08513-6.

5.    Attached to this Declaration as **Exhibit 3** is a certified copy of the Order Granting Defendant Horton's Motion for Partial Summary Judgment Declaring Insurance Coverage For Underlying Loss signed by the Hon. Judge Brian Tollefson and filed on June 3, 2011 in *Northcoast Yachts, Inc. and Stephen Yadvish v. Sea-Mountain Insurance Brokers, Inc., et al*., Pierce County Superior Court cause no. 10-2-08513-6.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Executed on this 26th day of January, 2012 at Seattle, Washington.

By: /s/ Deborah A. Severson
    Deborah A. Severson, WSBA No. 35603
    701 Pike Place, Suite 1800
    Seattle, WA  98101
    (206) 624-7990
    E-mail: dxs@leesmart.com

SEVERSON DECL. IN SUPPORT OF
DEFENDANTS' HORTON FRCP 12(B)(1)
MOTION TO DISMISS - 2
11-cv-02111
5398205.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I certify that on January 26th, 2012, I electronically filed the foregoing DECLARATION OF DEBORAH A. SEVERSON IN SUPPORT OF DEFENDANTS' EUGENE HORTON, LLC AND EUGENE HORTON'S FRCP 12(B)(1) MOTION TO DISMISS and this CERTIFICATE OF SERVICE with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

David Schoeggl, Esq.
David W. Howenstine, Esq.
Mills Meyers Swartling
1000 Second Avenue, 30th Floor
Seattle, WA  98104-1064
Phone: (206) 382-1000
Fax: (206) 386-7343
dschoeggl@mms-seattle.com; dhowenstine@millsmeyers.com
*Attorneys for Plaintiff*

I further certify that on this same date, I caused to be served by email courtesy copies of the above-described pleadings on the following non CM/ECF participants:

David B. Jensen, Esq.
Sylvia J. Hall, Esq.
Merrick, Hofstedt & Lindsey, P.S.
3101 Western Ave., Suite 200
Seattle, WA  98121
Phone: (206) 682-0610
Fax: (206) 386.7343
djensen@mhlseattle.com; shall@mhlseattle.com
*Attorneys for Co-Defendant*
*OAMPS Special Risk, Ltd.*

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 26th day of January, 2012, at Seattle, Washington.

s/ Deborah A. Severson
Joel E. Wright, WSBA No. 8625

SEVERSON DECL. IN SUPPORT OF
DEFENDANTS' HORTON FRCP 12(B)(1)
MOTION TO DISMISS - 3
11-cv-02111
5398205.doc

**L E E · S M A R T**

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deborah A. Severson, WSBA No. 35603
Attorneys for Defendants Eugene Horton, LLC
and Eugene Horton
Lee Smart, P.S., Inc.
701 Pike Street, Suite 1800
Seattle, WA 98101
Phone:  (206) 624-7990
Fax:  (206) 262-8304
E-mail:  jw@leesmart.com
E-mail:  dxs@leesmart.com

SEVERSON DECL. IN SUPPORT OF
DEFENDANTS' HORTON FRCP 12(B)(1)
MOTION TO DISMISS - 4
11-cv-02111
5398205.doc

L E E · S M A R T

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

# Exhibit 1

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

May 03 2011 1:15 PM

Honorable Brian Tollefson

KEVIN STOCK
COUNTY CLERK
NO: 10-2-08513-6

IN THE SUPERIOR COURT OF WASHINGTON
FOR PIERCE COUNTY

| | |
|---|---|
| NORTHCOAST YACHTS, INC., a Washington corporation, and STEPHEN YADVISH, a married man,<br><br>Plaintiffs,<br><br>v.<br><br>SEA-MOUNTAIN INSURANCE BROKERS, INC., a Washington corporation; EUGENE HORTON, LLC, Washington limited liability corporation; EUGENE HORTON, and JANE DOE HORTON and their marital community; THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and LONDON MARKET INSURERS SUBSCRIBING TO THE POLICY WITH THE UNIQUE MARKET REFERENCE B1093C080906; and OAMPS, a Lloyd's broker,<br><br>Defendants. | NO.  10-2-08513-6<br><br>DEFENDANTS UNDERWRITERS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT |

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 1

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

Defendants Those Certain Underwriters at Lloyd's of London and London Market Insurers subscribing to the policy with the unique market reference B1093C080906 (collectively "Underwriters") answer the Third Amended Complaint as follows:

## I.    ANSWERS TO ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

1.1    Answering paragraph 1.1, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

1.2    Answering paragraph 1.2, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

1.3    Answering paragraph 1.3, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

1.4    Answering paragraph 1.4, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

1.5    Answering paragraph 1.5, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

1.6    ADMITTED.

1.7    Answering paragraph 1.7, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

2.1    Answering paragraph 2.1, Underwriters admit that they subscribed to a policy of marine insurance in London, England that is alleged to cover a yacht that was represented to be in Pierce County and/or King County, admit that they have agreed to be subject to the jurisdiction of this Court, but deny all other allegations.

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 2

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6 Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

3.1     Answering paragraph 3.1, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

3.2     Answering paragraph 3.2, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

3.3     Answering paragraph 3.3, Underwriters deny that construction of Northcoast's 125-foot yacht was near completion in the summer and fall of 2009, but lack knowledge or information sufficient to form a belief concerning the remaining allegations and therefore deny them.

3.4     Answering paragraph 3.4, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

3.5     Answering paragraph 3.5, Underwriters admit that each of them severally subscribed, each for its own account and not one for another, to a policy with the unique market reference B1093C080906, admit that the terms contained and/or incorporated into the policy speak for themselves, but deny all remaining allegations therein.

3.6     Answering paragraph 3.6, Underwriters admit that a Northcoast Yachts, Inc. employee has made a claim against Northcoast Yachts, Inc. for an alleged work-related injury, deny all other allegations contained therein pertaining to Underwriters, and lack knowledge or information sufficient to form a belief concerning the allegations therein pertaining to others and therefore deny them.

3.7     Answering paragraph 3.7, Underwriters admit that they have asserted in this lawsuit that OAMPS is not their agent, that OAMPS did not provide notice of the May 2010

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 3

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6 Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

tender to Underwriters, and that OAMPS acted as a sub-agent of Stephen Yadvish through the Producer Defendants, but lack knowledge or information sufficient to form a belief concerning the allegations therein pertaining to others and therefore deny them.

3.8 Answering paragraph 3.8, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

3.9 Answering paragraph 3.9, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

3.10 Answering paragraph 3.10, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

4.1 N/A.

4.2 Answering paragraph 4.2, Underwriters admit that OAMPS Special Risks, Ltd., acting as a sub-agent of Stephen Yadvish through the Producer Defendants, procured the Policy for Stephen Yadvish, but deny all other allegations.

4.3 DENIED.

4.4 Answering paragraph 3.9, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

4.5 DENIED.

4.6 DENIED.

4.7 DENIED.

5.1 N/A.

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

5.2    Answering paragraph 5.2, Underwriters deny all allegations therein pertaining to Underwriters, but lack knowledge or information sufficient to form a belief concerning the allegations pertaining to others and therefore deny them.

6.1    N/A.

6.2    Answering paragraph 6.2, Underwriters admit that Plaintiff Stephen Yadvish is a potential first-party claimant under the Policy to the extent the Policy may be found to be in effect, but deny all remaining allegations therein.

6.3    Answering paragraph 6.3, Underwriters deny all allegations therein pertaining to Underwriters, but lack knowledge or information sufficient to form a belief concerning the allegations pertaining to OAMPS and therefore deny them.

6.4    Answering paragraph 6.4, Underwriters deny all allegations therein pertaining to Underwriters, but lack knowledge or information sufficient to form a belief concerning the allegations pertaining to OAMPS and therefore deny them.

6.5    Answering paragraph 6.5, Underwriters lack knowledge or information sufficient to form a belief concerning the allegations and therefore deny them.

Underwriters further deny that Plaintiffs have been damaged and are entitled to the relief requested in paragraphs 1 through 8 of their prayer for relief.

## II.    **AFFIRMATIVE DEFENSES**

As affirmative defenses to Plaintiffs' Third Amended Complaint, Underwriters, without conceding that they have the burden of proof as to any affirmative defense, allege the following:

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 5

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

1.     The Third Amended Complaint fails to state a claim upon which relief can be granted.

2.     Some or all of the claims asserted in the Third Amended Complaint against Underwriters do not set forth facts showing the existence of a justiciable controversy, are not ripe for adjudication, and seek an advisory opinion.

3.     The claims asserted in the Third Amended Complaint against Underwriters are barred in whole or in part by the doctrines of estoppel, laches, unclean hands, and/or wavier.

4.     Under the express or implied terms, conditions, exclusions, and other provisions contained and/or incorporated in the Policy, there is no coverage for some or all of the claims alleged to have been made against plaintiffs.

5.     The claims asserted in the Third Amended Complaint against Underwriters are barred in whole or in part to the extent plaintiffs have failed to comply with the conditions of the Policy, including but not limited to the duty to provide proper notice and to cooperate.

6.     Plaintiffs have failed to mitigate damages for which coverage is sought, and any recovery from Underwriters must be reduced accordingly.

7.     Plaintiffs negligently or intentionally concealed, misrepresented, or failed to disclose material facts.  As a result, the claims asserted by plaintiffs against Underwriters are barred, and/or any recovery by plaintiffs must be reduced, and/or Underwriters are entitled to rescind the policies, and/or the policies are void.

8.     Plaintiffs' claims are barred to the extent that they constitute obligations assumed or voluntary payments made by or on behalf of plaintiffs without prior notice to and express

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 6

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

written consent by Underwriters.

9.   To the extent that Plaintiffs are entitled to any recovery under the policies, such recovery must be reduced by amounts collected by plaintiffs from any other insurer, person, or other entity.

10.   Plaintiffs have failed to fulfill their obligations of good faith and fair dealing, and their claims are barred or must be reduced accordingly.

11.   All sums for which plaintiffs have been or may be held liable, including those arising from claims for which plaintiffs are entitled to coverage, if any, under the policies, must be allocated across all periods during which the acts, omissions, events, or damages giving rise to such liability took place, including all uninsured and self-insured periods.

12.   Laws of jurisdictions other than the State of Washington apply to some or all of the issues raised in the Third Amended Complaint.

13.   Plaintiffs' injuries and damages, if any, were caused by the fault of other persons or entities not acting on behalf of Underwriters, and recovery from Underwriters should be reduced in proportion to the degree of fault attributed to those other persons or entities.

### III.   COUNTERCLAIMS

For their counterclaims against plaintiffs, Underwriters allege as follows:

14.   Defendants Underwriters are informed and believe and therefore allege that Northcoast Yachts, Inc. is a Washington corporation doing business in Pierce County, Washington.  Underwriters are informed and believe and therefore allege that Stephen Yadvish is a resident of King County or Pierce County, Washington.

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 7

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

15.   This Court has jurisdiction pursuant to RCW 2.08.010 and 7.24.010.

**FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT**

16.   In their complaint, Plaintiffs have made demand upon Underwriters under the Policy in connection with Longshoremen and Harbor Workers' Compensation Act claims asserted against one or more of the plaintiffs by shipyard workers employed by plaintiff Northcoast Yachts, Inc.

17.   Underwriters are entitled to a declaration that the Policy is void and/or voidable, or alternatively a declaration regarding their rights and obligations under the Policy, including a declaration that they are not obligated to provide defense or indemnity coverage for the underlying worker's compensation claims.

**SECOND CAUSE OF ACTION – NEGLIGENT/INTENTIONAL MISREPRESENTATION**

18.   Plaintiffs and/or their agents negligently or intentionally concealed, misrepresented, and/or failed to disclose material facts to Underwriters in connection with placement of the Policy.  Information provided by or on behalf of plaintiffs was, in significant respects, incomplete, false, and/or misleading.

19.   Underwriters reasonably relied on plaintiffs' negligent and/or intentional misrepresentations to their detriment.

20.   Underwriters are entitled to rescind the Policy and/or the Policy is void as a result of plaintiffs' negligent or intentional concealment, misrepresentation, and/or failure to disclose material facts.

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 8

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

21.     Underwriters are also entitled to deny coverage for claims, such as the workers' compensation claims mentioned in the Third Amended Complaint, that have been submitted to Underwriters, on the grounds of misrepresentation, concealment, and nondisclosure.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Underwriters pray for relief as follows:

1.     Dismissal of Plaintiffs' Third Amended Complaint against Underwriters with prejudice and without costs.

2.     A declaration that Underwriters have no obligation to defend or indemnify plaintiffs in connection with the worker's compensation claims mentioned in the Third Amended Complaint.

3.     Rescission of the policies and/or a declaration that the policies are void.

4.     Judgment against Plaintiffs for Underwriters' costs and reasonable attorneys' fees to the extent allowed by law.

5.     For any other relief the Court deems just and equitable.

DATED:  May 3, 2011.

MILLS MEYERS SWARTLING
Attorneys for Those Certain Underwriters at
Lloyd's of London and London Market
Insurers subscribing to the policy with the
Unique Market Reference B1093C080906,


By:     /s/David M. Schoeggl
        David M. Schoeggl
        WSBA No.  13638
        David W. Howenstine
        WSBA No. 41216

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 9

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner indicated a copy of the within and foregoing document upon the following persons:

| | |
|---|---|
| *Attorneys for Plaintiffs Northcoast Yachts Inc. and Stephen Yadvish:*<br><br>Timothy James Parker<br>Carney Badley Spellman<br>701 5th Ave Ste 3600<br>Seattle, WA 98104-7010 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-467-8215<br>☐ Via Legal Messengers<br>☒ Via Email: parker@carneylaw.com |
| *Attorneys for Defendants Sea-Mountain Insurance Brokers, Inc.:*<br><br>John Randall Layman<br>Layman Layman & Robinson PLLP<br>601 S. Division St.<br>Spokane, WA 99202-1335 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 509-624-2902<br>☐ Via Legal Messengers<br>☒ Via Email: jrlayman@laymanlawfirm.com |
| *Attorneys for Defendants Eugene Horton LLC, Eugene Horton and Jane Doe Horton:*<br><br>Joel Evans Wright<br>Deborah A. Severson<br>Lee Smart, P.S., Inc.<br>701 Pike St. Ste 1800<br>Seattle, WA 98101-3929 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-624-5944<br>☐ Via Legal Messengers<br>☒ Via Email: dxs@leesmart.com,<br>jw@leesmart.com |

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND LONDON MARKET INSURERS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 10

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

| *Attorneys for Defendant OAMPS:* | ☐ Via first class mail, postage prepaid |
| --- | --- |
| | ☐ Via facsimile to 206-467-2689 |
| David B. Jensen | ☐ Via Legal Messengers |
| Sylvia J. Hall | ☑ Via Email: djensen@bhlseattle.com |
| Merrick Hofstedt & Lindsey | ☒ shall@bhlseattle.com |
| 3101 Western Avenue, Suite 200 | |
| Seattle, WA 98121 | |

DATED this May 3, 2011.

Linda McIntosh Wheeler

DEFENDANTS THOSE CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON AND LONDON MARKET INSURERS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
(No. 10-2-08513-6) - 11

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 13, 2012
SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

State of Washington, County of Pierce ss: I, Kevin Stock, Clerk of the aforementioned court do hereby certify that the document **SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F** containing 11 pages plus this sheet, is a true and correct copy of the original that is of record in my office and that this image of the original has been transmitted pursuant to statutory authority under RCW 5.52.050. In Testimony whereof, I have electronically certified and attached the Seal of said Court on this date.



Kevin Stock, Pierce County Clerk

By  /S/Melissa Engler,  Deputy.

Dated: Jan 13, 2012 7:50 AM

**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted electronically by the Court, sign on to: https://linxonline.co.pierce.wa.us/linxweb/Case/CaseFiling/certifiedDocumentView.cfm,
enter **SerialID: D7C2945A-F20D-AA3E-5919106761DBA58F**.
The copy associated with this number will be displayed by the Court.

# Exhibit 2

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 25 2011 4:17 PM

KEVIN STOCK
COUNTY CLERK
NO: 10-2-08513-6

1    Honorable Brian Tollefson

2

3

4

5

6

7    IN THE SUPERIOR COURT OF WASHINGTON
     FOR PIERCE COUNTY

8    NORTHCOAST YACHTS, INC., a
     Washington corporation, and STEPHEN
9    YADVISH, a married man,
                                           NO.  10-2-08513-6
10              Plaintiffs,
                                           DEFENDANTS UNDERWRITERS'
11        v.                               OPPOSITION TO DEFENDANT
                                           HORTON'S MOTION FOR PARTIAL
12                                         SUMMARY JUDGMENT
     SEA-MOUNTAIN INSURANCE
13   BROKERS, INC., a Washington corporation,
     *et al.*,
14
                Defendants.
15

16

17

18

19

20

21

22

23

24   UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
     PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 1
25
26

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## I.     <u>INTRODUCTION</u>

This case involves a claim for insurance coverage for Longshore and Harbor Workers' Compensation Act ("LHWCA")[1] claims asserted against plaintiff Northcoast Yachts. The underlying claimants are construction workers who were injured while building a 125' yacht constructed by Northcoast on spec at its former Tacoma yard (the "Northcoast 125"). Coverage is being sought under a 2009 yacht policy issued by Underwriters on the Northcoast 125.

In January 2009, Northcoast canceled its construction-related insurance policies and replaced them with a yacht policy. Discovery has revealed that in doing so, Northcoast and its brokers made misrepresentations and failed to disclose critical facts—namely that the Northcoast 125 was essentially a construction project rather than a private yacht floating on Lake Union and would remain so throughout most or all of the policy period. Summary judgment should be denied because there is at a minimum an issue of fact about whether these misrepresentations and nondisclosures preclude coverage for the underlying LHWCA claims. Moreover, the plain language of the policy limits Yadvish's LHWCA coverage to liabilities "in respect of" the insured yacht. Here, Yadvish's liability arises from the fact that he is president of a shipyard, not in respect of the yacht. Finally, the policy does not require Underwriters to defend Yadvish or Northcoast even if it had not been procured by misrepresentation.

---

[1] The LHWCA provides a quasi-private worker's compensation program for workers at shipyards and drydocks. It requires employers to purchase LHWCA insurance or to self-insure, and provides a regulatory scheme for administering and adjudicating on-the-job injury claims.

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## II.    FACTS

A.    **The London Insurance Market.**

Underwriters consist of four Lloyd's of London syndicates, including the Travelers Syndicate ("Travelers"), and an insurance company, the Royal Sun Alliance Insurance Co. Travelers is the lead underwriter, and insures private yachts throughout the world.  (Higham Decl. ¶ 1.)  When a yacht owner seeks to obtain insurance from a Lloyd's underwriter, the owner must use a London broker specially registered to place insurance with Lloyd's underwriters.  (*Id*. at ¶ 3.)  One of the key reasons that London brokers must be registered is the critical need for brokers presenting potential insurance risks to Lloyd's underwriters to provide accurate and complete information to the underwriters.  This information affects the underwriter's decision whether to insure a yacht in the first instance, as well as the premium and other insurance terms.  (*Id*.)  Absent accurate and complete information, the underwriter simply cannot assess the actual risks associated with insuring a particular yacht.  (*Id*.)  Based on hundreds of years of tradition and due to the practical realities of insuring risks worldwide, the London Insurance Market is based on the core principle that insureds and their brokers will accurately present to Underwriters all material facts concerning a risk – whether the underwriter specifically asks about them or not. (*Id*.)  This is known as the doctrine of utmost good faith.  (*Id*.)

B.    **Stephen Yadvish, Northcoast Yachts, and the Northcoast 125.**

Stephen Yadvish is the longtime owner of a small boat repair business on Lake Union in Seattle.  In 2003, Yadvish took over operation of Northcoast Yachts, Inc., a Tacoma yard

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 3

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

that manufactured large custom yachts.  (Schoeggl Decl., Ex. D (Fredrickson Dep.) at 9:21-10:9.)  In late 2006, Northcoast Yachts began constructing a 125' "spec" yacht (i.e., a boat built by the yard for the purpose of sale rather than being built to order for a customer).  Construction of the "Northcoast 125" took more than three years until it was completed and launched in March 2010.  Northcoast Yachts employed between 20 and 45 construction workers to build the yacht throughout 2009 and 2010.  (Fredrickson Dep. at 19:13-20:16.)  The Northcoast 125 was owned and financed by Northcoast.  Because it was built on spec in order to be sold as a new yacht, Northcoast could not allow anyone to use it prior to sale for fear it would be branded a used boat and its value substantially reduced.  (Schoeggl Decl., Ex. F (Yadvish Dep.) at 74:3-9.)

## C.  January 2009 Replacement of The Builder's Risk and LHWCA Policies With a Yacht Policy.

For 20 years, Yadvish used insurance broker Eugene Horton to place insurance for Northcoast and other businesses he operated.  (Schoeggl Decl., Ex. B (1st Horton Dep.) at 10:25.)  Prior to January 2009, Northcoast had two separate policies that affected the Northcoast 125:  a builder's risk policy and a Longshore and Harbor Workers' Compensation Act ("LHWCA") policy.  (1st Horton Dep. at 38:4-7.)  A builder's risk policy provides coverage for property damage occurring during the course of construction, whereas a LHWCA policy provides coverage for the claims of workers injured during construction.  Both types of policies are designed to insure against construction-related risks.

A yacht policy, on the other hand, is designed to insure already completed yachts against navigational risks such as running aground, onboard fires, etc.  Though yacht policies

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

typically also include LHWCA coverage, this coverage is intended to cover a yacht owner's potential LHWCA liability in the rare circumstance when a crewmember is injured during maintenance work on the yacht while it is out of the water in dry dock. (Higham Decl. ¶ 6.) The LHWCA risks associated with a yacht under construction are dramatically higher than the risks associated with a completed yacht because dozens of builders doing welding and other heavy construction are significantly more likely to be injured than a crew of 3 to 6 performing occasional maintenance. (Higham Decl. ¶ 6.) Thus, yacht policies are typically less expensive than builder's risk and LHWCA policies.

The evidence in this case shows that Yadvish expressed a strong desire to switch from builder's risk/LHWCA policies to a yacht policy to save money on his insurance premiums. (1st Horton Dep. at 41:11-24.) Yadvish told Horton that the premiums for the two construction-related policies were "killing" him, and he repeatedly pushed Horton to change coverage to a yacht policy as soon as possible. (*Id.*) Horton testified that on one previous occasion, he had succeeded in placing a yacht policy on a smaller Northcoast yacht three months before the yacht was launched and sold. Thus, Horton testified, he told Yadvish that once the Northcoast 125 was at least 85% complete insurers would "look" at insuring it under a yacht policy, and "if they like it they'll do it." (Schoeggl Decl., Ex. C (2d Horton Dep.) at 102:12-103:1.) Soon afterwards, Yadvish told Horton that the yacht had exceeded the 85% mark and requested that Horton attempt to procure a yacht policy and then cancel the builder's risk and LHWCA policies if a yacht policy could be obtained. (1st Horton Dep. at 42:2-5.)

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 5

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

**D.      Procurement of the Yacht Policy.**

On January 12, 2009, Horton, acting on behalf of Northcoast, emailed Lee Ranson, a registered Lloyd's broker at defendant OAMPS Special Risks, Ltd. ("OAMPS") asking Ranson to approach Lloyd's Underwriters about the possibility of obtaining a yacht policy for the Northcoast 125.  (1st Horton Dep., Ex. 12.)  The email which attached a completed "Mega Yacht Insurance Application" form stated:

> [Yadvish] has completed one boat and is just finishing the current yacht which is eighty five percent complete.  It is in the final stages and the only work that needs to be done is install finishing items that are already purchased and are being installed at this time.  These items are electronics, appliances and furnishings that are not built in.  Also things like davits and deck gear.  The hull, deck and house are complete with all machinery, generators, watermakers, heating/air conditioning, hatches, windows, port lights etc.  Steve will use the boat for himself and to show the boat and take orders off from this boat.  While doing that he will use this boat as his personal yacht[.]

(1st Horton Dep., Ex. 12.)

Among other things, this email and application represented that the yacht was 85% complete and was owned by Stephen Yadvish, that Yadvish planned to moor it in Lake Union and use it as his personal yacht, and that it had three full-time crew.  Although it is unclear whether Yadvish saw the January 12 email, he reviewed and signed the insurance application.  (2d Horton Dep. at 120:14-121:8.)

Shortly after receiving the email and application, Ranson approached John Higham, an insurance underwriter with the Travelers Syndicate at Lloyd's, and asked him to provide a quote for insuring the Northcoast 125 under a yacht policy.  Relying on the accuracy and completeness of the information provided – which suggested that the Northcoast 125 was a

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 6

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

favorable risk – Higham quoted a low premium and agreed to commit his syndicate, along with the three other Lloyd's syndicates and Royal Sun Alliance, to insure the Northcoast 125 under a yacht policy.  (*Id.* at ¶ 7.)

Discovery has revealed the following regarding these statements.  First, Northcoast owned the Northcoast 125 and Yadvish did not.[2]  In his deposition, Yadvish stated that:

> I own the company [*i.e.*, Northcoast Yachts] but the boat is in Northcoast's name because you can't put it in my name or I have to pay a tax on the boat so the boat stays in the company's name because it's for sale, it's not my boat.

(Yadvish Dep. at 83:15-19.)  Yadvish went on to explain that he could not afford to own or operate a yacht such as the Northcoast 125.  (*Id.* at 74:11-17.)

Second, the evidence has revealed that the Northcoast 125 was under construction for the entire 12-month period of Underwriters' yacht policy and was never moored in Lake Union during that time.  Further, Yadvish rejected the suggestion that he ever intended to moor the yacht at Lake Union:

> QUESTION:  So you never intended to moor [the Northcoast 125] permanently in Lake Union?
>
> MR. YADVISH:  No, there's no permanent moorage that's a repair yard there.  That's all that is.  There is no place to rent for moorage there on Lake Union at any yard.  We don't rent space out.

---

[2]  In response to Underwriters' Interrogatory No. 11, plaintiffs answered:

> INTERROGATORY NO. 11: Please describe who owned the "Northcoast 125" at all times between December 31, 2008, and the present date.

> ANSWER: Steve Yadvish owns Northcoast Yachts.  The vessel is owned by Northcoast Yachts.

(Schoeggl Decl., Ex. A.)

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 7

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

(*Id.* at 90:24-91:4.)  Instead, Yadvish admitted that he intended to ship the Northcoast 125 to Florida as soon as it was completed.  (*Id.* at 90:19-23.)

The evidence has also revealed that Yadvish never used,[3] and never intended to use, the Northcoast 125 as his personal yacht.  (*Id.* at 73:22-76:17.)

Finally, Underwriters' investigation shows that as of January 2009, the Northcoast 125 needed at least six months more work before it could be completed and launched.[4]  Also, monthly inspections of the vessel commissioned by Northcoast's financing company showed that the vessel was not 85% complete until in January 2009 and would not be 85% complete until months later.  (Yadvish Dep., Exs. 56, 58, 61-65; *see also* Schoeggl Decl. ¶ 7 & Ex. F.) These inspections - which list dozens of items that were not finished - also cast doubt on the accuracy of the statements in the January 12, 2009 email regarding the boat's condition.  (*Id.*) Based on this evidence, Underwriters' expert concluded that the Northcoast 125 was 65% complete in mid-January 2009 and still required many more months of work before it could be completed and launched.  (Cromer Decl. ¶ 8.)

**E.**    **LHWCA Claims.**

In May 2009, Christopher Moore, a welder employed by Northcoast Yachts to work on construction of the Northcoast 125, injured his back while working in the Northcoast 125

---

[3] In response to Underwriters' Interrogatory No. 8, plaintiffs answered:

INTERROGATORY NO. 8:  Please describe each instance between January 31, 2008, and the present date in which Stephen Yadvish used the "Northcoast 125" as his personal yacht.

ANSWER:  None.  (Ex. 24.)

(Schoeggl Decl., Ex. A.)

[4] (Yadvish Dep. at 27:20-28:23 & Exs. 58, 61.)

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 8

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

engine room.  Moore later brought a claim under the LHWCA to recover for his alleged injury.  At least four other shipyard workers engaged in constructing the Northcoast 125 were also injured on the job during the period of Underwriters' yacht policy.

### III.   ISSUES PRESENTED

1.   Should summary judgment be denied on the ground that the policy under which coverage is sought was procured by misrepresentations and nondisclosures?

2.   Does the yacht policy provide coverage to Yadvish where his potential liability arises as a result of his position as president of Northcoast rather than "in respect of the insured yacht" as required by the policy?

3.   Should the Court rule as a matter of law, that Underwriters had a duty to defend Northcoast?

### IV.   EVIDENCE RELIED UPON

In this Opposition, Underwriters rely on the Declarations of Brian Cromer, John Higham, and David M. Schoeggl; excerpts from the transcripts of the depositions of Eugene Horton, Paul Fredrickson, and Stephen Yadvish, and accompanying exhibits; plaintiffs' answers to Underwriters' First Set of Interrogatories and Requests for Production; documents produced by the parties during discovery; and the pleadings and filings in the record.

### V.   ARGUMENT AND AUTHORITY

Summary judgment is appropriate only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).  The court must view all facts in the light most favorable to the nonmoving

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

party, and may grant summary judgment "only if, from all of the evidence, reasonable persons could reach but one conclusion." *Vallandigham v. Clover Park School Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).  The burden on summary judgment rests with the moving party to show that there is no genuine issue as to any material fact.  *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 515-16, 799 P.2d 250 (1990).

Here, the Court should deny Horton's summary judgment motion because genuine issues of material fact exist regarding whether the Policy was procured by material misrepresentations and nondisclosures and because the plain language section of the Policy does not provide LHWCA coverage for the underlying claims.

**A.      A Genuine Issue of Material Fact Exists Regarding Whether the Policy Is Enforceable as a Result of Material Misrepresentations and Nondisclosures Made By or on behalf of Yadvish.**

This issue is governed by federal maritime insurance law, not Washington state law. Here, discovery has revealed that Yadvish and Horton misrepresented the ownership of the yacht, the moorage of the yacht, the intended uses of the yacht, and the extent of completion of the yacht.  These misrepresentations were all material to the risk insured, and Underwriters would not have agreed to insure the Northcoast 125 if they had been provided with accurate and complete information.   Thus, Underwriters are entitled to deny coverage for the misrepresented risks.

**1.      Federal Maritime Law Governs the Issue of Misrepresentation.**

As a preliminary matter, the Court must determine whether federal maritime insurance law or Washington state law governs the issue of misrepresentation, as the two apply different

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 10

LAW OFFICES OF
**Mills Meyers Swartling**
1000 Second Avenue, 30th Floor
Seattle, Washington 98104-1064
Telephone (206) 382-1000
Facsimile (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

standards to evaluate the effect of misrepresentations on the validity of insurance policies. Under federal maritime law, the doctrine of *uberrimae fidei* -- utmost good faith -- imposes an affirmative duty on an applicant for marine insurance to disclose all material facts, including those not asked for by the insurer.   Under Washington law, RCW 48.18.090(1) permits rescission where the insured made material misrepresentations with intent to deceive.

In marine insurance cases, "state law controls the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." *Kimta AS v. Royal Ins. Co.*, 102 Wn. App. 716, 721-22, 9 P.3d 239 (2000) (applying federal maritime law regarding the efficient proximate cause rule as applied to a marine cargo insurance policy because the federal rule was "well-established"); *see Ross v. Frank B. Hall & Co. of Wash.*, 73 Wn. App. 630, 634, 870 P.2d 1007 (1994).   Under this approach, a court must apply federal maritime common law to a particular issue whenever an established rule of maritime law exists; otherwise, state law applies. *Kimta AS*, 102 Wn. App. at 721-22; *Ross*, 73 Wn. App. at 635.

Here, the choice-of-law analysis is simple because it is well-settled that the doctrine of utmost good faith is an established rule of admiralty law. *Certain Underwriters at Lloyds, London v. Inlet Fisheries Incorp.*, 518 F.3d 645, 654 (9th Cir. 2008); *see also Port Lynch, Inc. v. New England Int'l Assurety of Am., Inc.*, 754 F. Supp. 816, 822 (W.D. Wash. 1991). Therefore, the maritime doctrine of utmost good faith governs the issue of misrepresentation here.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 11

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

**2.  Genuine Issues of Material Fact Exists Regarding Whether Yadvish and His Agents Violated the Doctrine of Utmost Good Faith By Making Material Misrepresentations and Nondisclosures About the Northcoast 125.**

The doctrine of utmost good faith requires that an applicant for a marine insurance policy must reveal every fact within his knowledge that is material to the risk, regardless whether or not he is asked. *New Hampshire Ins. Co. v. C'Est Moi, Inc.*, 519 F.3d 937, 938 (9th Cir. 2008); *Cigna Prop. & Cas. Ins. Co. v. Polaris Corp.*, 159 F.3d 412, 420 (9th Cir. 1998).  A policy will be deemed unenforceable if the insurer can show either (1) "intentional misrepresentation of a fact, regardless of materiality" or (2) "nondisclosure of a fact material to the risk, regardless of intent." *Polaris Pictures*, 159 F.3d at 420.  The relevant focus under utmost good faith, is whether the insured knew of material information that it failed to disclose—not whether the insurer asked about or investigated the information—because the doctrine "rests on disclosure, not solicitation." *Inlet Fisheries*, 518 F.3d at 655.  "A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular premium." *Id.*

Courts have repeatedly held that any material misrepresentation, even a merely negligent one, is sufficient to trigger utmost good faith and preclude enforcement of a maritime insurance policy.  In *C'Est Moi*, for example, the insured incorrectly listed the *previous* insurer of the subject yacht when it filled out a question in the insurance application asking for the *present* insurer. 519 F.3d at 940.  In *Polaris*, the insured failed to disclose that the boat for which insurance was sought had three owners instead of one. 159 F.3d at 420.  In

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

both instances, the Ninth Circuit held that these misrepresentations/nondisclosures eliminated coverage regardless of the insured's intent or lack thereof.

Finally,

> The general rule in the context of marine insurance is that a broker acts as an agent for the insured. The insurer is not to blame if the broker erroneously prepares the application, because the insurer issues the policy based on the application. The insurer is entitled to rely on the representations of the insured's agent.

*Great Lakes Reinsurance (UK) PLC v. Morales*, — F. Supp. 2d —, 2010 WL 5252851, at *8 (S.D. Fla. Dec. 9, 2010) (citations omitted).  Thus it is immaterial to the issue before the Court whether the misrepresentations were made by Yadvish, Horton, OAMPS, or some combination of the three.

In this case, a genuine issue of material fact exists regarding the enforceability of the yacht policy because Yadvish, acting through his agents Horton and OAMPS, violated the doctrine of utmost good faith by making material misrepresentations and nondisclosures regarding the Northcoast 125.  The evidence, viewed in the light most favorable to Underwriters, demonstrates that they misrepresented its ownership, location, intended use, extent of completion, and that they failed to disclose its expected time of completion.  As Underwriters' evidence shows, all of these misrepresentations were material because they bore directly on Underwriters' decision to insure the yacht.

   a.  Ownership

The evidence shows that Yadvish and his agents misrepresented the ownership of the Northcoast 125.  The insurance application lists: "Owner's Name: Stephen Yadvish."  (2d

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 13

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

Horton Dep., Ex. 26.)  This representation is false.  Instead, it is undisputed that Northcoast Yachts—not Yadvish—owned the yacht in January 2009 and throughout the entire policy period.  In response to an interrogatory regarding the ownership of the vessel, Plaintiffs confirmed that "[t]he vessel is owned by Northcoast Yachts."  (Schoeggl Decl., Ex. A (Int. 11).)  Yadvish also admitted that he never owned the yacht:

> I own the company [*i.e.*, Northcoast Yachts], but the boat is in Northcoast's name because you can't put it in my name or I have to pay a tax on the boat, so the boat stays in the company's name because it's for sale.  It's not my boat.

(Yadvish Dep. at 83:15-19.)

The identity of the owner of the Northcoast 125 was a fact material to the risk.  (Higham Decl. ¶ 8(b).)  As Higham explains, "[a] yacht owned by a shipyard entails a higher risk because it is more likely to be actively marketed and used as a demonstrator," which increases the risk due to the large number of potential customers, rather than guests, expected to board and view the yacht.  (*Id.*)  Moreover, the Ninth Circuit has specifically ruled that misrepresentations about the ownership of a boat violate the duty of utmost good faith and eliminate coverage.  *Polaris*, 159 F.3d. at 420.

### b.  Location And Moorage

The insurance application states that the Northcoast 125 would be moored "At Owners Slip at his yard Lake Union Washington."  (2d Horton Dep., Ex. 26.)  However, it is undisputed that the yacht never left the Tacoma construction yard during the entire policy period.  (*See* Schoeggl Decl., Ex. A (Int. 12).).  Moreover, Yadvish admitted in his deposition

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

that he never intended to moor the vessel at Lake Union other than temporarily to install soft

goods:

| | | |
|---|---|---|
| YADVISH: | When we left Tacoma, there isn't any docks there to tie the boat up, so we put the boat in with a crane, go out by dingy, drive the boat to Lake Union to finish all the soft goods, you know, the leathers and the wall coverings up there, and that's why it would be put at the yard there to prepare the boat to be shipped to Florida. |
| QUESTION: | And in January 2009 your intent was that the boat would be shipped to Florida as soon as all the soft goods were installed? |
| YADVISH: | Yeah, try and make the boat show to sell the boat. |
| QUESTION: | So you never intended to moor [the Northcoast 125] permanently in Lake Union? |
| YADVISH: | No, there's no permanent moorage that's a repair yard there. That's all that is.  There is no place to rent for moorage there on Lake Union at any yard.  We don't rent space out. |

(Yadvish Dep. at 90:24-91:4.)   Underwriters' evidence demonstrates that the moorage and

location of the Northcoast 125 were facts material to the risk because a yacht moored at the

owner's slip in Lake Union would be exposed to lesser risks than a yacht that remains at an

active construction yard or one that was shipped to Florida and moored there. (Higham Decl.

¶ 8(c).)

      *c.   Intended Use*

      The January 12, 2009 email states: "Steve will use the boat for himself and to show

the boat and take orders off from this boat.  While doing that he will use this boat as his

personal yacht[.]"  (1st Horton Dep., Ex. 12.)  None of these statements were true.  To the

contrary, Yadvish never intended to use the yacht as his personal yacht because he did not

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 15

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

want to and could not afford to do so.  Plaintiffs have admitted that Yadvish never used the

Northcoast 125 as his personal yacht:

> INTERROGATORY NO. 8:  Please describe each instance between January 31, 2008, and the present date in which Stephen Yadvish used the "Northcoast 125" as his personal yacht.

> ANSWER:  None.

(Schoeggl Decl., Ex. A (Int. 8).)  Yadvish confirmed this in his deposition.  Regarding the

January 12, 2009 email, he testified:

> This is incorrect, that Steve will use the boat for himself.  There is no way that -- if I used it for myself it's considered a used boat, it is not a new boat any more.  . . .  This boat has to stay never used, never chartered, it has to stay brand new or the value of it would drop by millions of dollars. . . .

> And to take orders off the boat, couldn't afford it.  I can't afford the boat; this boat has to be sold.  I can't keep this boat to take orders off.  I can't afford a $15 million loan.  You can look at my tax records.  *I would never use this boat for my personal yacht* because I couldn't afford it, and I own other boats. . . .

> I can't afford to use [the Northcoast 125] for myself.  The boat is 100 percent marketed and it's been marketed since day one in the building for sale.  That was my terms with the finance company and that was the only reason I was building a boat to sell.  *Never to use it personally, not even once.*

(Yadvish Dep. at 73:22-76:17 (emphasis added).)  The intended use of the yacht was a fact

material to the risk insured because a yacht used by a private owner for personal pleasure

entails lower risks than a yacht intended to be marketed and used as a demonstrator at boat

shows and other events.  (Higham Decl. ¶ 8(b).)

> d.  *Extent of Completion*

The evidence also shows that Yadvish's representations that the Northcoast 125 was

85% complete in January 2009 and that construction was nearly complete were false.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 16

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

Contrary to these representations, the vessel was not launched for another 14 months.  The evidence shows that during much of this time Northcoast employed more than 40 full-time construction workers to build the yacht. (Fredrickson Dep. at 19:13-20:16.)  This evidence alone undermines the accuracy of the representation that the yacht was 85% complete in January 2009 as well as the description suggesting that only a small amount of work remained to be done.

Plaintiffs' interrogatory answer regarding the yacht's state of completion in January 2009 contrast sharply with the misleading description in the January 12 email.  It stated:

> INTERROGATORY NO. 5:  Please describe in detail all work accomplished on the "Northcoast 125" and all work yet to be accomplished as of December 31, 2008.

> ANSWER:  Generally, the hull and superstructure was substantially formed and stacked; mechanical systems were being installed; electrical systems were being installed; interior walls roughed in and joiner components were being built; and exterior fairing and priming were underway.

(Schoeggl Decl, Ex. A (Int. S).)  The contrast between these two descriptions above raises an issue of fact.

In addition, the detailed progress reports prepared during this period by an independent third-party surveyor confirm that the Northcoast 125 was less than 85% complete in January 2009.  (Yadvish Dep., Exs. 56, 58, 61-65.)  Each progress report contains the surveyor's best estimate of the vessel's percentage of overall completion on the date of inspection.  (*Id*.)  The progress reports establish that the vessel was no more than 76% to 78% complete in mid-January 2009, and not 85% complete until as late as April 2009.  (*Id*. at Exs. 58, 61-63.)

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 17

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

January 7, 2009: "In terms of overall physical completion on the shop floor, the vessel appears to be approximately 76% complete."

February 2, 2009: "In terms of overall physical completion on the shop floor, the vessel appears to be approximately 78% to 80% complete."

February 23, 2009: "In terms of overall physical completion on the shop floor, the vessel appears to be approximately 81% to 83% complete."

April 3, 2009: "In terms of overall physical completion on the shop floor, the vessel appears to be approximately 84% to 85% complete."

(*Id.*) Reisner's progress reports directly contradict the representations that the Northcoast 125 was 85% complete in January 2009.[5]

Finally, Underwriters have submitted the declaration of Brian Cromer, a qualified expert in large fiberglass yacht construction. In Mr. Cromer's professional opinion, the Northcoast 125 was only 65% complete in January 2009 and was not 85% complete until August 2009. (Cromer Decl. ¶¶ 1, 8.)

The extent of completion of the Northcoast 125 was highly material to the risk insured by Underwriters. A yacht under construction entails a significant additional risk of construction-related injuries and damage. (Higham Decl. ¶ 8(a).) By contrast, once a yacht is completed, launched, and put into service as a private pleasure yacht, the risk of employee injuries is substantially reduced. (*Id.*) Underwriters would not have agreed to insure the Northcoast 125 if they had known that instead of being very close to completion, the yacht would be worked on by a crew of 20 to 40 builders for another year and would in fact remain a construction project throughout the entire term of the policy. (*Id.*)

---

[5] Yadvish may claim that he disagreed with this survey's estimates of percentage completion. However, even if this were true in January 2009, he should have at a minimum disclosed this disagreement to Underwriters.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 18

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6   Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

e.      *Remaining Construction Time.*

The January 12, 2009 email does not specify an estimated date of completion, although it implies that completion was imminent.  The time remaining to complete the yacht—as opposed to the time it could be expected to be moored on Lake Union and used by Yadvish for private pleasure purposes—was clearly material given the very different risks posed by the two types of acitivites.  (Higham Decl. ¶ 8.)

Documents produced very recently by Northcoast show that as of January 2009, Northcoast had slipped the expected completion date to August 2009.  (Yadvish Dep. at 27:20-28:23 & Exs. 58, 61.)  The fact that Northcoast knew the yacht needed at least another six months work by a crew of 40 and would therefore spend at least half of the period of Underwriter's yacht policy as a construction project was a critical fact that Yadvish knew but failed to disclose.

At a minimum, the evidence in this case establishes that genuine issues of material fact exist regarding whether the insured, through his brokers, breached his duty of utmost good faith.  Moreover, because Underwriters have established that the above-described misrepresentations or nondisclosures were material, the doctrine of utmost good faith bars Northcoast's claim regardless of whether the misrepresentations were intentional or merely negligent.  *See C'Est Moi*, 519 F.3d at 940.  This is the case regardless whether Underwriters independently investigated the truth of the representations or asked extensive follow-up questions about the vessel, because utmost good faith "rests on disclosure, not solicitation."  *Inlet Fisheries*, 518 F.3d at 655.  The insured and its agents owed an affirmative duty to

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 19

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

accurately disclose all information material to Underwriters' decision to insure the yacht, and Underwriters were entitled to rely on the representations made to them. *Id.* As a consequence of their violation of this duty, the Policy does not cover the LHWCA claims at issue and the Court should deny Horton's motion for partial summary judgment.[6]

### 3. Even Under Washington Law, Genuine Issues of Material Fact Exist Because the Evidence Shows That Yadvish and Horton Made Material Misrepresentations With Intent to Deceive.

Federal admiralty law governs the misrepresentation issue in this case. Nevertheless, even if the Court were to apply Washington state insurance law, the pending motion should still be denied. In Washington, RCW 48.18.090(1) governs an insurer's right to deny coverage with respect to non-maritime insurance policies based on misrepresentations. It changes common law and provides that:

> [N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his or her behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

The issues of materiality and intent to deceive are typically questions of fact. *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1003 (W.D. Wash. 2004); *Wilburn v.*

---

[6] An insurer is entitled to assert misrepresentation as a defense to coverage. *See Queen City Farms, Inc., v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 111, 891 P.2d 718 (1995) (Utter, J., dissenting) (majority opinion on this point). Washington law, rather than federal admiralty law, controls the effect of a misrepresentation on the enforceability of a policy because no well-established rule of federal admiralty law exists with respect to the remedy for misrepresentation. *See Kimta AS*, 102 Wn. App. at 721-22. Washington law is clear that material misrepresentations such as those made here give Underwriters the option to rescind the policy, affirm the policy and sue for misrepresentation, or affirm the policy and assert misrepresentation as a defense to a particular claim for coverage. *Queen City Farms, Inc.*, 126 Wn.2d at 111 (Utter, J., dissenting). An insurer need not tender the premium to the insured when asserting misrepresentation as a defense to coverage. *Id.; see Gossett v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 954, 974, 948 P.2d 1264 (1997). Here, Underwriters are entitled to assert misrepresentation as a defense to any alleged coverage under the Policy that arises out of the misrepresentations aspects of the risk.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 20

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

*Pioneer Mut. Life Ins. Co.*, 8 Wn. App. at 616, 620, 508 P.2d 632 (1973).  A court must view materiality from the perspective of the insurer, not the insured, *Kim v. Allstate Ins. Co., Inc.*, 153 Wn. App. 339, 355, 223 P.3d 1180 (2009), and a representation is deemed material "if the representation influenced the insurance company's decision to issue the coverage," *Cutter & Buck*, 306 F. Supp. 2d at 1003.  With respect to intent to deceive, evidence showing that "a material false statement was made knowingly raises a presumption that it was made with intent to deceive."  *Wilburn*, 8 Wn. App. at 620.  The burden then shifts to the insured to come forward with evidence that the misrepresentations were made without intent to deceive, and in the absence of such evidence "the presumption prevails."  *Id*.  An insured's mere denial of a deceptive intent is insufficient to overcome the presumption especially when the insured knows the true facts.  *Rowley v. USAA Life Ins. Co.*, 670 F. Supp. 2d 1199, 1203 (W.D. Wash. 2009).

Here, there can be no serious question that material false statements were made in connection with the presentation to Underwriters in January 2009.  The materiality requirement is satisfied because Underwriters have submitted evidence that they would not have insured the yacht if they had been provided with accurate information.  (Higham Decl. ¶¶ 9-10.)  Likewise, Underwriters' evidence establishes Yadvish's knowledge that the representations were false. Therefore, Underwriters are entitled to a presumption that the misrepresentations were made with intent to deceive.  *Kay*, 28 Wn.2d at 302.  Since the insured and Horton have not even attempted to overcome this presumption, genuine issues of

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 21

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

material fact exist concerning the enforceability of the Policy even if the Court applies Washington law rather than federal maritime law.

**B.**     **The Policy Does Not Provide Coverage Because Yadvish's Alleged Liability Arises as a Result of His Position as President of Northcoast Yachts, Not "in Respect of the Insured Yacht" as Required by the Policy.**

Even if the misrepresentations had not occurred, and the LHWCA coverage in Section E of the policy could be invoked by Yadvish and Horton, summary judgment should still be denied because Section E does not, on its face, cover the claims at issue.

It is undisputed that unlike the builder's risk and LHWCA policies that were canceled in January 2009, Underwriters' yacht policy insures Yadvish but not Northcoast Yachts. Horton's motion seeks to avoid this fact by contending that Yadvish had personal liability for the Moore claim on the theory that, under federal law, the president of a shipbuilding company can be held personally liability for LHWCA benefits when the shipyard cannot pay them.  Thus, Horton asserts that even though Yadvish is the only insured, his potential liabilities to Moore are covered under Section E of the Policy.

This argument contradicts the plain language of Section E, which limits coverage to "any liability of the Assured ***in respect of the insured yacht*** which shall arise under" the LHWCA.  (1st Horton Dep., Ex. 3 (emphasis added).)  Since Yadvish's potential liability for Moore's injuries are not "in respect of" the Northcoast 125 but rather due to his position as president of Northcoast Yachts, this language does not create coverage.

The LHWCA requires employers to secure compensation for injured employees, and establishes civil and criminal penalties for employers who fail to do so.  33 U.S.C. §§ 932(a),

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 22

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

938(a).  If a corporate employer fails to secure compensation under the LHWCA, the corporation's president is subject to a possible fine or imprisonment and is personally liable for any compensation owed to the employee.  33 U.S.C. § 938(a).  It is undisputed that Northcoast Yachts failed to obtain the required LHWCA coverage after it canceled its LHWCA policy in January 2009.

As these statutory provisions make clear, Yadvish's potential liability under the LHWCA does not arise "in respect of the insured yacht" as required by Section E, but rather arises as a result of his position as president of Northcoast Yachts. Even accepting Horton's assertion that the policy does not specifically require that Yadvish own the vessel to have coverage under Section E, it at least requires that Yadvish's LHWCA liabilities arise out of his relationship with the yacht.  Yadvish's potential indirect liability under the LHWCA arises only because he is president of Northcoast Yachts.  This would be the case for any injury at the shipyard, and has nothing to do with Yadvish's connection with the yacht itself.  Thus, the Policy's plain language precludes coverage[7] and the Court should deny Horton's motion for summary judgment on this ground as well.

## C.    The Court Should Deny Horton's Motion For Summary Judgment To The Extent It Seeks A Ruling On Underwriters' Duty To Defend.

Horton contends that even if issues of fact preclude a ruling on coverage, the Court should still hold that Underwriters had a duty to defend Northcoast and/or Yadvish against the Moore claim.  This argument should be rejected for four reasons.  First, genuine issues of

---

[7] This construction is consistent with the intent of Section E, which was designed to protect yacht owners against the occasional LHWCA liabilities they might face if a crew member is injured while the yacht is in drydock.  It was not designed or priced to replace a shipyard's LHWCA coverage for a crew of 20-40 construction workers. (Higham Decl. ¶¶ 5,8(a).)

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 23

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

material fact exist regarding Underwriters' right to void the policy due to Yadvish's misrepresentations and/or to assert misrepresentation as a defense to any alleged coverage under the Policy. *Queen City Farms, Inc.*, 126 Wn.2d at 111 (Utter, J., dissenting). These issues must be resolved before the terms of the Policy can be interpreted or enforced, and thus summary judgment is inappropriate at this time. Second, Section E of the policy, by its plain language, is an indemnity-only coverage that does not create a duty to defend. Although defense costs may be covered as a "liability," there is no separate duty to defend as there is in many other policies. Thus, the "duty to defend" cases cited in Horton's motion are inapposite. Third, accepting Horton's duty-to-defend claim also appears to seek a ruling that Underwriters have acted in bad faith. However, the law is clear that issues of fact about an insured's misrepresentations eliminate the insured's ability to assert a bad faith claim. *Cf. Kim*, 153 Wn. App. at 361; *Wickswat v. Safeco Ins. Co.*, 78 Wn. App. 958, 969, 904 P.2d 767 (1995). Finally, there are issues of fact about whether Underwriters could be found to have acted in bad faith even if the Court were to rule that there is coverage for the LHWCA claims as a matter of law. This is because Yadvish's London broker, OAMPS, negligently failed to transmit the Moore claim notice to Underwriters for more than six months until after this lawsuit was filed. (Schoegl Decl., Ex. G); *see Unigard Ins. Co. v. Leven,* 97 Wn. App. 417, 425, 983 P.2d 1155 (1999) (Washington law requires that Underwriters receive a specific request by the insured before the duty to defend is triggered). Therefore, the Court should deny Horton's request to rule that the Policy obligates Underwriters to defend Yadvish against the Moore claim.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 24

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## VI.    <u>CONCLUSION</u>

Underwriters' evidence shows at a minimum that material issues of fact exist about whether Yadvish and his agents made material misrepresentations when applying for insurance, thereby precluding coverage for the misrepresented claim. Moreover, the Policy by its plain terms does not provide coverage for these claims because Yadvish's personal liability results from his position as president of Northcoast Yachts, not "in respect of the insured yacht," as required by the Policy.   Finally, issues of fact preclude any finding that Underwriters either had or violated a duty to defend Yadvish against the Moore claim. For these reasons, Underwriters respectfully request that the Court deny Horton's motion for partial summary judgment.

DATED:  April 25, 2011.

MILLS MEYERS SWARTLING
Attorneys for Those Certain Underwriters at
Lloyd's of London and London Market
Insurers subscribing to the policy with the
Unique Market Reference B1093C080906,


By:    /s/David M. Schoeggl
David M. Schoeggl
WSBA No. 13638
David W. Howenstine
WSBA No. 41216

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 25

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner indicated a copy of the within and foregoing document upon the following persons:

| | |
|---|---|
| *Attorneys for Plaintiffs Northcoast Yachts Inc. and Stephen Yadvish:*<br><br>Timothy James Parker<br>Carney Badley Spellman<br>701 5th Ave Ste 3600<br>Seattle, WA 98104-7010 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-467-8215<br>☐ Via Legal Messengers<br>☒ Via Email: parker@carneylaw.com |
| *Attorneys for Defendants Sea-Mountain Insurance Brokers, Inc.:*<br><br>John Randall Layman<br>Brad Crockett<br>Layman Layman & Robinson PLLP<br>601 S. Division St.<br>Spokane, WA 99202-1335 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 509-624-2902<br>☐ Via Legal Messengers<br>☐ Via Email: jrlayman@laymanlawfirm.com<br>☒ Via Email bradcrockett@laymanlawfirm.com |
| *Attorneys for Defendants Eugene Horton LLC, Eugene Horton and Jane Doe Horton:*<br><br>Joel Evans Wright<br>Deborah A. Severson<br>Lee Smart, P.S., Inc.<br>701 Pike St. Ste 1800<br>Seattle, WA 98101-3929 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-624-5944<br>☐ Via Legal Messengers<br>☒ Via Email: dxs@leesmart.com,<br>jw@leesmart.com |
| *Attorneys for Defendant OAMPS:*<br><br>David B. Jensen<br>Sylvia J. Hall<br>Merrick Hofstedt & Lindsey<br>3101 Western Avenue, Suite 200<br>Seattle, WA 98121 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-467-2689<br>☐ Via Legal Messengers<br>☒ Via Email: djensen@bhlseattle.com<br>☒ shall@bhlseattle.com |

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 26

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

1

DATED this April 25, 2011.

2

3

Linda McIntosh Wheeler

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   UNDERWRITERS' OPPOSITION TO HORTON'S MOTION FOR
PARTIAL SUMMARY JUDMGENT (No. 10-2-08513-6) - 27

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

25

26

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

Honorable Brian Tollefson

IN THE SUPERIOR COURT OF WASHINGTON
FOR PIERCE COUNTY

NORTHCOAST YACHTS, INC., a
Washington corporation, and STEPHEN
YADVISH, a married man,

             Plaintiffs,

    v.

SEA-MOUNTAIN INSURANCE
BROKERS, INC., a Washington corporation;
EUGENE HORTON, LLC, Washington
limited liability corporation; EUGENE
HORTON, and JANE DOE HORTON and
their marital community; THOSE CERTAIN
UNDERWRITERS AT LLOYD'S OF
LONDON and LONDON MARKET
INSURERS, subscribing to the policy with
the Unique Market Reference
B1093C080906,

             Defendants.

NO. 10-2-08513-6

[PROPOSED] ORDER DENYING
DEFENANT HORTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

This matter has come before the Court on Defendant Horton's Motion for Partial

Summary Judgment Declaring Insurance Coverage for Underlying Loss. The Court has

considered the following:

[PROPOSED] ORDER DENYING HORTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 10-2-08513-6)- 1

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

1.      Defendant Horton's Motion for Partial Summary Judgment Declaring Insurance Coverage for Underlying Loss;

2.      Defendants Those Certain Underwriters at Lloyd's of London and London Market Insurers' Opposition to Defendant Horton's Motion for Partial Summary Judgment;

3.      Declaration of Brian Cromer;

4.      Declaration of John Higham;

5.      Declaration of David Schoeggl;

6.      Opposition and supporting documents from any other party, if any; and

7.      Reply and supporting documents, if any.

The Court also heard oral argument, and is fully advised.

Based on the foregoing, it is hereby ORDERED that Defendant Horton's Motion for Partial Summary Judgment Declaring Insurance Coverage for Underlying Loss is DENIED in its entirety.

DONE IN OPEN COURT this _____ day of _____, 2011.


_____
Honorable Brian Tollefson

[PROPOSED] ORDER DENYING HORTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 10-2-08513-6)- 2

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

Presented by:

MILLS MEYERS SWARTLING
Attorneys for Those Certain Underwriters at
Lloyd's of London and London Market
Insurers subscribing to the policy with the
Unique Market Reference B1093C080906,

By:     /s/David M. Schoeggl
        David M. Schoeggl
        WSBA No.:  13638
        David W. Howenstine
        WSBA No.: 41216

[PROPOSED] ORDER DENYING HORTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 10-2-08513-6)- 3

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

## DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner indicated a copy of the within and foregoing document upon the following persons:

| | |
|---|---|
| *Attorneys for Plaintiffs Northcoast Yachts Inc. and Stephen Yadvish:*<br><br>Timothy James Parker<br>Carney Badley Spellman<br>701 5th Ave Ste 3600<br>Seattle, WA 98104-7010 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-467-8215<br>☐ Via Legal Messengers<br>☒ Via Email: parker@carneylaw.com |
| *Attorneys for Defendants Sea-Mountain Insurance Brokers, Inc.:*<br><br>John Randall Layman<br>Layman Layman & Robinson PLLP<br>601 S. Division St.<br>Spokane, WA 99202-1335 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 509-624-2902<br>☐ Via Legal Messengers<br>☒ Via Email: jrlayman@laymanlawfirm.com |
| *Attorneys for Defendants Eugene Horton LLC, Eugene Horton and Jane Doe Horton:*<br><br>Joel Evans Wright<br>Deborah A. Severson<br>John W. Schedler<br>Lee Smart, P.S., Inc.<br>701 Pike St. Ste 1800<br>Seattle, WA 98101-3929 | ☐ Via first class mail, postage prepaid<br>☐ Via facsimile to 206-624-5944<br>☐ Via Legal Messengers<br>☒ Via Email: jws@leesmart.com,<br>dxs@leesmart.com, jw@leesmart.com |

[PROPOSED] ORDER DENYING HORTON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 10-2-08513-6)- 4

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

1

| *Attorney for Defendant OAMPS:* | ☐ Via first class mail, postage prepaid |
| | ☐ Via facsimile to 206-467-2689 |
| David B. Jensen | ☐ Via Legal Messengers |
| Sylvia J. Hall | ☐ Via Email: djensen@bhlseattle.com |
| Merrick Hofstedt & Lindsey | ☒ shall@bhlseattle.com |
| 3101 Western Avenue, Suite 200 | |
| Seattle, WA 98121 | |

2

3

4

5

6   DATED this April 25, 2011.

7

8   
    Linda McIntosh Wheeler

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   [PROPOSED] ORDER DENYING HORTON'S MOTION FOR
     PARTIAL SUMMARY JUDGMENT
     (No. 10-2-08513-6)- 5

25

26

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Case Number: 10-2-08513-6  Date: January 10, 2012
SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

State of Washington, County of Pierce ss: I, Kevin Stock, Clerk of the aforementioned court do hereby certify that the document **SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55** containing 32 pages plus this sheet, is a true and correct copy of the original that is of record in my office and that this image of the original has been transmitted pursuant to statutory authority under RCW 5.52.050. In Testimony whereof, I have electronically certified and attached the Seal of said Court on this date.



Kevin Stock, Pierce County Clerk

By  /S/BARBARA KNIGHTON,  Deputy.

Dated: Jan 10, 2012 11:47 AM

**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted electronically by the Court, sign on to: https://linxonline.co.pierce.wa.us/linxweb/Case/CaseFiling/certifiedDocumentView.cfm,

enter **SerialID: C9290BE1-F20D-AA3E-570A3C70EAC3AD55**.

The copy associated with this number will be displayed by the Court.

# Exhibit 3

10-2-08513-6   36544421   ORGPSJ   06-06-11

Hon Brian Tollefson
Hearing Date & Time: May 6, 2011 at 9:00 a m

2

3

4

5

6

FILED
DEPT. 8
IN OPEN COURT
JUN 03 2011
By _____
DEPUTY

SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

7   NORTHCOAST YACHTS, INC , a
    Washington corporation, and STEPHEN
    YADVISH, a married man,

8              Plaintiffs,

9       vs.

10  SEA-MOUNTAIN INSURANCE
    BROKERS, INC , a Washington corporation,

11  EUGENE HORTON, LLC, a Washington
    limited liability corporation, EUGENE

12  HORTON, and JANE DOE HORTON and
    their marital community, LLOYDS,

13  LONDON, an England corporation,
    TRAVELERS SYNDICATE 5000 AT

14  LLOYDS, an England corporation,
    TRAVELERS SYNDICATE

15  MANAGEMENT LIMITED, an England
    corporation, ROYAL & SUNALLIANCE, an

16  England corporation, and JOHN DOE
    SYNDICATES or INSURING

17  ENTITIES/PERSONS, and OAMPS, a
    Lloyd's Broker

18

19              Defendants

No. 10-2-08513-6

[PROPOSED]

**ORDER GRANTING DEFENDANT
HORTON'S MOTION FOR PARTIAL
SUMMARY JUDGMENT DECLARING
INSURANCE COVERAGE FOR
UNDERLYING LOSS**

20

21       THIS MATTER having come on regularly before the Court on Defendant Horton's

22  Motion for Partial Summary Judgment Declaring Insurance Coverage and Underlying Loss

23  ("Horton's Motion"), and the Court having reviewed the records and files herein, and having

24  heard the arguments of counsel, and specifically:

25       1   Defendant Horton's Motion for Partial Summary Judgment Declaring Insurance

[PROPOSED] ORDER GRANTING
HORTONS' MOTION FOR PARTIAL
SUMMARY JUDGMENT- 1
5331933

**LEE SMART**
PS, Inc   Pacific Northwest Law Offices
1800 One Convention Place  701 Pike Street  Seattle  WA  98101-3929
Tel  206 624 7990   Toll Free 877 624 7990   Fax 206 624 5944

Coverage and Underlying Loss, including attachments and appendices thereto;

*Declaration of John Schedler + attachments*

2   Defendant Underwriters' Opposition to Defendant Horton's Motion for Partial Summary Judgment,

    a.   Declaration of David M. Schoeggl re Underwriters' Opposition to Defendant Horton's Motion for Partial Summary Judgment and exhibits thereto;

    b   Declaration of John Higham and the exhibit thereto;

    c.   Declaration of Brian Cromer;

3.   Defendant OAMPS' Response in Opposition to Defendant Horton's Motion for Partial Summary Judgment;

    a   Declaration of Sylvia J. Hall in Opposition to Defendant Horton's Motion for Partial Summary Judgment,

4.   Defendant Horton's Reply in Support of Motion for Partial Summary Judgment Declaring Insurance Coverage for Underlying Loss,

5. ~~Horton's supplemental briefing~~; *Revised* *Declaration of Eugene Horton and Exhibits.*

6 *Plaintiffs Memorandum in Support of Motion; Declaration of Stephen Yadush and Declaration of Tim Parker*

and the Court being fully advised in the matter, now, therefore. it is

7. *Plaintiffs Notice of Errata*

HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Horton's Motion

8. *Plaintiffs opposition to Underwriters Motion to strike*

is GRANTED and the Court finds as follows

9. *Supplemental declaration of David Schoeggl.*

    A   ^ The policy insures Stephen Yadvish for claims under the Longshore and Harbor

10. *Supplemental briefing of defendant Underwriters.*

Workers' Compensation Act, 33 U.S.C 901. *et seq* ("Longshore Act"); and

    ~~B.   The defendant insurance carriers owe Stephen Yadvish defense and indemnity~~

~~for the claims against them arising under the Longshore Act as alleged in this matter.~~

11 *Supplemental Declaration of John Higham*

12 *Underwriters' Response to OAMPS' ~~Motion t~~ CR56(f) motion And Request to Strike Portions of the Declaration of Michael P. Ryan; ~~Underwriters'~~ Request to*

13 *Horton's opposition to Underwriters Request to strike Portions of Ryan Declaration*

LEE · SMART
PS, Inc   Pacific Northwest Law Offices
1800 One Convention Place 701 Pike Street  Seattle  WA  98101-3929
Tel  206 624 7990    Toll Free  877 624 7990    Fax  206 624 5944

Case 2:11-cv-02119-RSM Document 11 Filed 01/26/12 Page 55 of 56

Case Number: 10-2-08513-6, Date: January 10, 2012
SerialID: 0C290B4D-F20F-645A-D5F72E01DA3BBDBF
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

GIVEN UNDER MY HAND this 3rd day of June, 2011.

Hon. BRIAN TOLLEFSON, Judge

Presented by.
LEE SMART, P S., INC.

Joel E. Wright, WSBA No 8625
Deborah A. Severson, WSBA No. 35603
Michael P Ryan, WSBA No 33535
Attorneys for Defendants Horton & Eugene Horton, LLC

w/ permission

WSBA #35603
John Layman WSBA No
Attorney for SeaMountain
Insurance Brokers

Approved as to form only

David M. Schossl
WSBA 18638

FILED
DEPT. 8
IN OPEN COURT

JUN 03 2011

By _____
DEPUTY

Approved

Att-y for Plaintiffs
#8797

David B. Jensen, WSBA #20941
Ror Defendant OAMPS

[PROPOSED] ORDER GRANTING
HORTONS' MOTION FOR PARTIAL
SUMMARY JUDGMENT- 3
5331933

LEE SMART
PS. Inc  Pacific Northwest Law Offices

1800 One Convention Place  701 Pike Street  Seattle  WA  98101-3929
Tel  206 624 7990   Toll Free  877 624 7990   Fax  206 624 5944

Case Number: 05-2-08513-6 Date: January 10, 2012
SerialID: C9290B4D-F20F-6452-D5F22E64DA5BBDBF
Digitally Certified By: Kevin Stock Pierce County Clerk, Washington

State of Washington, County of Pierce ss: I, Kevin Stock, Clerk of the aforementioned court do hereby certify that the document **SerialID: C9290B4D-F20F-6452-D5F22E64DA5BBDBF** containing 3 pages plus this sheet, is a true and correct copy of the original that is of record in my office and that this image of the original has been transmitted pursuant to statutory authority under RCW 5.52.050. In Testimony whereof, I have electronically certified and attached the Seal of said Court on this date.

Kevin Stock, Pierce County Clerk

By  /S/BARBARA KNIGHTON,  Deputy.

Dated: Jan 10, 2012 11:47 AM

**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted electronically by the Court, sign on to: https:// linxonline.co.pierce.wa.us/linxweb/Case/CaseFiling/certifiedDocumentView.cfm, enter **SerialID: C9290B4D-F20F-6452-D5F22E64DA5BBDBF**.

The copy associated with this number will be displayed by the Court.