Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and LONDON MARKET INSURERS, subscribing to the Policy with the Unique Market Reference B1093C080906,<br><br>Plaintiffs,<br><br>v.<br><br>EUGENE HORTON, LLC, a Washington limited liability corporation; EUGENE HORTON, an individual; and OAMPS SPECIAL RISKS, LTD., a Lloyd's broker,<br><br>Defendants. | NO. 2:11-cv-2111<br><br>PLAINTIFFS THOSE CERTAIN UNDERWRITERS AND LONDON MARKET INSURERS' OPPOSITION TO DEFENDANT HORTON'S MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR:<br>February 24, 2012 |

## I.  INTRODUCTION

In this lawsuit, plaintiffs Those Certain Underwriters at Lloyd's of London and London Market Insurers (collectively, "Underwriters") have sued two insurance brokers—one based in Seattle and the other based in the U.K.—for their roles in misrepresenting the status of a 125-foot yacht when they placed insurance for the yacht with Underwriters on behalf of

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 1

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

their client. The complaint invokes both admiralty jurisdiction and diversity jurisdiction. One of the defendants, Seattle broker Eugene Horton, along with his LLC, has moved to dismiss the complaint for lack of federal court jurisdiction.

Underwriters respectfully request that the Court deny Horton's motion to dismiss. Admiralty jurisdiction exists under 28 U.S.C. § 1333 because this case arises from a marine insurance policy and concerns an essential principle of federal maritime law—the doctrine of *uberrimae fidei*—utmost good faith. The legal issues in this case are undeniably maritime in nature and scope—thereby invoking this Court's admiralty jurisdiction. Further, this case does not implicate the *Rooker-Feldman* doctrine because Underwriters are not challenging a state court judgment. Finally, if the Court were to determine that admiralty jurisdiction does not exist, diversity jurisdiction exists as regards Horton. Accordingly, the Court should deny Horton's Rule 12(b)(1) motion and allow this case to proceed in this forum.

## II.    BACKGROUND

This is an action for damages arising from misrepresentations made by Horton and OAMPS when procuring a maritime yacht insurance policy from Underwriters. As alleged in detail in the complaint, Horton served for many years as a specialized marine insurance broker for Stephen Yadvish and his business, Northcoast Yachts, Inc. Compl. ¶ 17. In 2006, Northcoast began building a 125-foot luxury motoryacht—referred to as the "Northcoast 125."[1] Compl. ¶ 14. Although the yacht was originally insured under a builder's risk policy and a worker's compensation policy, Horton recommended in 2009 that Northcoast switch to

---

[1] Photographs of the Northcoast 125 can be viewed online at http://northcoastyachts.com/NCY_125.html.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 2

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

a less expensive yacht insurance policy even though the Northcoast 125 was not yet completed. Compl. ¶¶ 18-19. Yacht policies are designed to cover completed yachts. Compl. ¶ 19.

The admiralty doctrine of *uberrimae fidei* imposes a duty of utmost good faith and requires the affirmative disclosure of all information relevant to an insurer's decision to insure a vessel under a marine insurance policy. *See, e.g., Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 648 (9th Cir. 2008); Thomas J. Schoenbaum, ADMIRALTY & MARITIME LAW § 19-14 (4th ed. 2010). Underwriters allege that Horton—either negligently or intentionally—violated this fundamental doctrine of marine insurance by making multiple material misrepresentations and non-disclosures concerning the Northcoast 125. Compl. ¶¶ 25-30. Underwriters would not have issued the yacht policy but for these misrepresentations. Compl. ¶ 31.

The yacht policy was issued on the standard OAMPS yacht policy form together with "American Yacht Form R12." *See* Howenstine Decl., Ex. A (yacht policy). The yacht policy provides typical marine coverage for the vessel (hull, machinery, boats, gear, and equipment) and insures against a range of marine risks related to navigation, contact with dock or harbor equipment, salvage, and piracy, among others. Pursuant to American Yacht Form R12, the yacht policy also provides coverage for liability under the Longshore and Harbor Workers' Compensation Act (LHWCA).

In May 2010, Christopher Moore, a Northcoast employee, filed a LHWCA claim. Compl. ¶ 34. In connection with this claim, Northcoast Yachts filed a lawsuit in Pierce

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO
DISMISS (No. 2:11-cv-2111) - 3

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

County Superior Court against Horton and OAMPS, and later added coverage claims against Underwriters. Underwriters did not assert or pursue claims against either Horton or OAMPS in this lawsuit. Compl. ¶ 36. After the Pierce County judge found on a motion for partial summary judgment that insurance coverage existed and Underwriters settled with the injured worker, Northcoast nonsuited its claims against Horton and OAMPS, and assigned them to Underwriters in a settlement agreement. Compl. ¶ 37. Underwriters then filed this lawsuit.

### III.  ARGUMENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses subject matter jurisdiction. When considering a Rule 12(b)(1) motion, the court must take all allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court is not restricted to the face of the pleadings, but instead may review additional evidence to resolve factual disputes. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

### A.  Admiralty Jurisdiction Exists Because this Case Concerns a Marine Insurance Policy and Fundamental Principles of Admiralty Law.

28 U.S.C. § 1333(1) vests district courts with original jurisdiction over any civil case of admiralty or maritime jurisdiction. "It is well settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction." *Evers v. Purse Seine Vessel Owners Ass'n*, 2010 WL 276233, at *3 (W.D. Wash. Jan. 20, 2010) (Martinez, J.). This principle has been confirmed time and again by the Supreme Court, the Ninth Circuit, and federal courts nationwide. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S. Ct. 886 (1961); *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1025 (9th Cir. 2001).

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Two cases are dispositive of the jurisdictional issue here. The first is the Supreme Court's 2004 ruling that that federal courts' admiralty jurisdiction extends to all disputes over contracts that have the "nature and character" of maritime contracts, including disputes that appear to have nothing to do with traditional maritime commerce. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23-24, 125 S. Ct. 385 (2004). Even though *Kirby* involved goods damaged in a train derailment, the Court affirmed the existence of admiralty jurisdiction because the contract at issue was a traditional maritime contract governing shipment of goods from Australia to Alabama.[2]

The second dispositive decision is *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022 (9th Cir. 2001), in which the Ninth Circuit noted that "[w]e have recognized repeatedly that marine insurance policies are maritime contracts for purposes of admiralty jurisdiction." 247 F.3d at 1025. *La Reunion Francaise* involved a yacht insurance policy issued on a 20-foot powerboat. *Id*. at 1024. The policy required that the boat be used only on the inland waters of California, and that it be stored on land for six months of the year. *Id*. When the insured submitted a theft claim alleging that the yacht had been stolen while in dry storage, the insurer sought to rescind the policy based on the insured's failure to disclose that several of his trucks, automobiles, and motorcycles had previously been stolen. *Id*. The district court dismissed the case for lack of admiralty jurisdiction, but the Ninth Circuit reversed, holding that:

---

[2] Justice O'Connor famously introduced the *Kirby* case as "a maritime case about a train wreck." 543 U.S. at 18, 125 S. Ct. 385.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 5

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

> After reviewing the entire contract, we conclude that the subject matter of this insurance policy is wholly maritime in nature. The fact that [the insured boat owner] is required to store his boat on land for six months of the year and that the policy provides coverage for theft on land does not change the policy's essential character.

*Id*. at 1026.

Here, a review of the entire yacht policy for the Northcoast 125 undeniably demonstrates that is a contract of marine insurance:  The yacht policy was issued on a standard yacht policy form.  *See* Howenstine Decl., Ex. A (yacht policy).  The yacht policy provides typical marine coverage for the vessel (hull, machinery, boats, gear, and equipment) and insures against a range of marine risks related to navigation, contact with dock or harbor equipment, salvage, and piracy, among others.  *Id*.  And, the subject matter of the yacht policy—a 125-foot yacht that was to be moored in Lake Union with a full time crew of three—was undoubtedly a maritime risk.[3]  *Id*.

Horton's reliance on an earlier Ninth Circuit case, *Royal Insurance Co. of America v. Pier 39 Ltd. Partnership*, 738 F.2d 1035 (9th Cir. 1984), is misplaced.  *Pier 39* involved a misrepresentation issue regarding insurance for a floating breakwater and dock.  Recognizing that "[i]nsurance on vessels is clearly within the [court's admiralty] jurisdiction," the Ninth Circuit concluded that docks and breakwaters are not vessels and thus not subject to admiralty jurisdiction.[4]  739 F.2d at 1037.  Here, the Northcoast 125 is undeniably a vessel.  The yacht

---

[3] The portion of the yacht policy's coverage at issue is coverage for the shipowner's LHWCA's liabilities, a typical subject for admiralty jurisdiction. *See, e.g., Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602-03 (1st Cir. 1997) (holding that yacht policy including coverage "constitutes an ocean marine policy within the federal courts' admiralty jurisdiction").

[4] The Ninth Circuit's analytical approach in *Pier 39,* which involved focusing on the circumstances of the loss as well as on the nature of the contract, was subsequently disapproved by the Supreme Court in *Kirby.*  543 U.S. 14,

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 6

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

policy at issue was procured based on Horton's representation that it would be used as such. Therefore, admiralty jurisdiction applies.

Horton also suggests that since the Northcoast 125 was never launched during the policy period and since Moore was injured in the vessel's engine room while the vessel was sitting on land, the policy should be treated as if it were a land-based construction policy. This argument should be rejected. First, the Supreme Court directed in *Kirby* that the nature of the contract at issue determines jurisdiction—not the facts that lead to the dispute. Here, the yacht policy at issue and the doctrine of *uberrimae fidei* are undeniably maritime in nature. Maritime insurance misrepresentation issues invoke admiralty jurisdiction even if many of the relevant events occur when the ship is on land. *See, e.g., La Reunion Francaise*, 247 F.3d at 1026 (admiralty jurisdiction existed for theft of boat while it was in extended dry storage); *Stanley T. Scott*, 496 F.2d at 526 (holding that a broker's right to reimbursement for unpaid premiums tied to a marine insurance policy arose within admiralty jurisdiction); *see also Simmons v. The Jefferson*, 215 U.S. 130, 141-43, 30 S. Ct. 54 (1909) (holding that a vessel in dry dock for repairs remains within the scope of admiralty jurisdiction).

Second, while Horton is correct that ship construction contracts are often not considered to be maritime in nature, this is not a dispute about a ship construction contract. Instead, it is a dispute about misrepresentations leading to the issuance of a maritime insurance policy to cover what was represented as and believed to be a finished or nearly-finished seagoing yacht.

---

23-24, 125 S. Ct. 385 (holding that admiralty jurisdiction is determined by the nature and character of contract at issue, not by surrounding circumstances).

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO
DISMISS (No. 2:11-cv-2111) - 7

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Third, the Court should reject Horton's suggestion that because he successfully procured a yacht policy rather than a builder's risk policy by misrepresenting the nature of the risk to be insured, this Court loses admiralty jurisdiction because of the non-maritime nature of the policy that might have been issued had Horton told the truth. Further, even if Horton's claim that this policy should be treated as a builder's risk policy were correct, federal courts often exercise admiralty jurisdiction over builder's risk policies issued to cover ship construction. *See, e.g., Fireman's Fund Ins. Co. v. Sneed's Shipbuilding, Inc.,* 803 F. Supp. 2d 530 (E.D. La. 2011); *AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.,* 920 F. Supp. 1318 (S.D. Tex. 1996).

In sum, the Court should deny Horton's motion to dismiss because the yacht policy and the admiralty doctrine of *uberrimae fidei* invoke federal admiralty jurisdiction under 28 U.S.C. § 1333.

**B.    Diversity Jurisdiction.**

The Court need not address Horton's arguments regarding diversity jurisdiction because admiralty jurisdiction exists on the facts of this case. However, to the extent the Court concludes that the only potential basis for jurisdiction is diversity, Underwriters respectfully request that the Court permit them to dismiss OAMPS as a defendant without prejudice. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218 (1989); *AT&T Commc'ns.-E., Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 2008 WL 2609334, at *3 (W.D. Wash. June 26, 2008). "If diversity is lacking despite proper alignment of the parties, dispensable, nondiverse parties may be dismissed pursuant to Federal Rule of

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 8

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Civil Procedure 21 in order to cure the jurisdictional defect." *AT&T Commc'ns.-E., Inc.*, 2008 WL 2609334, at *3. OAMPS is a dispensable party and dismissal would eliminate any concerns regarding the presence of alien entities on both sides of this action.

With respect to the citizenship of Underwriters, the Ninth Circuit has not resolved the method for determining the citizenship of Lloyd's of London insurance syndicates.[5] In accordance with the real party in interest test, the Sixth Circuit holds that the citizenship of the actual underwriters, as agents for unincorporated syndicates, determines citizenship for purposes of diversity jurisdiction rather than the citizenship of all of the syndicate members. *Certain Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39, 43-44 (6th Cir. 1994). Here, although there were four subscribing Lloyd's syndicates (Syndicates 5000, 600, 1084, and 3000),[6] the underwriting was accomplished by a single British citizen underwriter.[7] In addition to the four Lloyd's syndicates, one traditional insurance company (Royal & Sun Alliance) subscribed to the policy, and it is a British insurance company with its principal place of business in London, England. Therefore, in accordance with *Layne*, diversity exists between Underwriters and Horton.

---

[5] The Society of Lloyd's, London is not itself an insurance company and does not insure risks; rather, Lloyd's is a British organization that provides infrastructure for one of the leading insurance markets worldwide. *Certain Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39, 41-42 (6th Cir. 1994). Individual underwriters, known as "names" or "members," assume the risks. A member can be either a person or a corporation. Once admitted to the Society of Lloyd's, a member is subject to various bylaws and regulations and will underwrite insurance through unincorporated associations called syndicates. A syndicate cumulatively assumes the risk of a particular insurance policy, with individual members signing up for specific percentages of the risk. Each syndicate is managed by a specific lead underwriter. *Id*. at 42. Unsurprisingly, this structure has led to difficulties in applying the rules concerning diversity jurisdiction.

[6] The names of these syndicates were previously disclosed to Horton and others in the course of discovery in the state court case.

[7] *See* Lloyd's online directory entry for Travelers Syndicate Management Limited available at: http://marketdirectories.lloyds.com/BuildPages.aspx?Page=4&Agent=280.

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

C. **The *Rooker-Feldman* Doctrine Does Not Apply Because Underwriters Are Not Challenging a State Court Judgment or Alleging Error by the State Court.**

The *Rooker-Feldman* doctrine stands for the narrow proposition that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the judgment of a state court." *Mfg. Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1029 (9th Cir. 2005) (quoting *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)). The Ninth Circuit provides the following "general formulation" of the doctrine:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Id*. (quoting *Noel*, 341 F.3d at 1154). In accordance with this formulation, "*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). If as a premise *Rooker-Feldman* applies to a prohibited de facto appeal alleging legal error by a state court, the doctrine will also bar the federal plaintiff from litigating any issues that are "inextricably intertwined" with the de facto appeal. *Id.* at 1142; *Noel*, 341 F.3d at 1165. "The inextricably intertwined test thus allows courts to dismiss claims closely related to claims that are themselves barred under *Rooker-Feldman*." *Kougasian*, 359 F.3d at 1142.

This case is not barred by the *Rooker-Feldman* doctrine for the simple reason that Underwriters are not seeking relief from a state court judgment. As the Ninth Circuit holds:

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 10

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

"[W]here the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1163. That is exactly the situation here: In the complaint, Underwriters assert claims against Horton and OAMPS for misrepresentations in violation of the admiralty doctrine of *uberrimae fidei*. Underwriters do not assert claims against the state court judge and do not allege that the state court made an erroneous decision or acted in violation of federal law. Indeed, Horton even concedes that Underwriters do not plead a challenge to the state court decision. Nevertheless, Horton argues without any support that this action is a de facto appeal because the relief sought against Horton for its material misrepresentations would somehow nullify the state court ruling. This is not correct. The state court judge made a finding that coverage exists under Underwriters' yacht policy; Underwriters have not sought to challenge that finding. Rather, they have sued the brokers involved in placing the policy for misconduct during the placing process and have alleged that this misconduct caused Underwriters to issue a policy they would not otherwise have issued and to suffer damages in the form of the settlement payment to Yadvish and Moore. Thus, any damages awarded against Horton for his bad acts would not retroactively rescind coverage for *Northcoast* under the yacht policy and would not obligate Northcoast to disgorge the insurance proceeds already paid under the policy.

Although this case, like countless others, is *related* to a previous state court case, that does not mean that *Rooker-Feldman* operates as a jurisdictional bar. Rather, it means that, if appropriate, this Court must determine whether to apply ordinary principles of issue

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO
DISMISS (No. 2:11-cv-2111) - 11

LAW OFFICES OF
MILLS MEYERS SWARTLING
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

preclusion. Horton correctly points out that Underwriters discussed misrepresentation issues in the state court action, but Underwriters did not assert misrepresentation cross-claims against Horton (or OAMPS), and the state court never ruled on any such hypothetical claims or on related issues because the plaintiffs voluntarily dismissed their lawsuit long before trial. The mere fact that these issues were mentioned in briefing does not bring this action within the reach of *Rooker-Feldman*.

Therefore, the Court should deny Horton's motion to dismiss under *Rooker-Feldman*.

### IV.  CONCLUSION

In light of the foregoing, the Court should deny Horton's Rule 12(b)(1) motion to dismiss. This action is properly before the Court under admiralty jurisdiction and does not constitute a de facto appeal in violation of *Rooker-Feldman* because Underwriters do not challenge a state court judgment.

DATED:  February 21 2012.

        MILLS MEYERS SWARTLING
        Attorneys for Those Certain Underwriters at
        Lloyd's of London and London Market Insurers,
        subscribing to the Policy with the Unique Market
        Reference B1093C08906

By:  */s/ David W. Howenstine*
     David M. Schoeggl
     WSBA No. 13638
     dschoeggl@millsmeyers.com
     David W. Howenstine
     WSBA No. 41216
     dhowenstine@millsmeyers.com

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 12

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Deborah A. Severson, dxs@leesmart.com, lkb@leesmart.com

Joel E. Wright, jw@leesmart.com, jbm@leesmart.com, sm@leesmart.com

David B Jensen, djensen@mhlseattle.com, kfergin@mhlseattle.com

DATED: February 21, 2012.

*Teresa A. Caceres*
Teresa A. Caceres, Legal Assistant

UNDERWRITERS' OPPOSITION TO HORTON'S MOTION TO DISMISS (No. 2:11-cv-2111) - 13

LAW OFFICES OF
**MILLS MEYERS SWARTLING**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343