UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and LONDON MARKET INSURERS, subscribing to the Policy with the Unique Market Reference B1093C080906, | CASE NO. C11-2111RSM<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| EUGENE HORTON, LLC, a Washington limited liability corporation; EUGENE HORTON, an individual; and OAMPS SPECIAL RISKS, LTD., a Lloyd's broker, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs "Those Certain Underwriters at Lloyd's of London" and London Market Insurers are four Lloyd's of London syndicates seeking damages from defendants Eugene Horton, LLC, Eugene Horton, and OAMPS Special Risks, LTD for actions arising from the issuance of a marine insurance policy to insure a luxury yacht under construction in the State of Washington. This matter is now before the Court upon Defendants' Motion to Dismiss. Dkt. # 6. Having carefully considered the motion, Plaintiffs' response, Defendants' reply, along with the balance of the record, the Court shall deny Defendants' Motion to Dismiss.

## II. BACKGROUND

Plaintiffs "Those Certain Underwriters at Lloyds of London" and London Market Insurers, subscribing to the Policy with the Unique Market Reference B1093C080906 are four Lloyd's syndicates and an insurance company, all of whom have their principal place of business in London, England (collectively the "Plaintiffs"). Only one syndicate member, the Travelers Syndicate, and the insurance company, Royal Sun Alliance Insurance Co., have been specifically identified by name.

Plaintiffs filed this action pursuant to 28 U.S.C. §§ 1332 and 1333 seeking damages from Eugene Horton, LLC, a Washington limited liability corporation, Eugene Horton, a Washington resident and insurance broker (referred to together as "Horton"), and OAMPS Special Risks, Ltd. ("OAMPS"), a foreign entity and registered Lloyd's broker (collectively the "Defendants"). Plaintiffs' claims arise from a maritime yacht insurance policy procured by Defendants on behalf of Stephen Yadvish ("Yadvish") and Northcoast Yachts, Inc. ("Northcoast") to insure a one hundred twenty-five foot luxury yacht (the "Northcoast 125") under construction from 2006 through 2010.

Prior to January 2009, Northcoast had insured the construction of the Northcoast 125 under two separate insurance policies: a builder's risk policy that covered damage to the project during the course of construction, and a worker's compensation policy that covered liability to injured workers under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). In January 2009, Yadvish approached Horton about obtaining a different insurance policy that could lower Northcoast's insurance premiums. Horton, working through OAMPS, secured a yacht insurance policy from Plaintiffs covering the Northcoast 125 for the period of January 2009 to January 2010. At the time of the issuance of this policy, the Northcoast 125 was still under construction and, in fact, was not launched until March 2010. Dkt. # 7, Ex. 2. The yacht

insurance policy, number B1093C080906, was identified as a Hull & Machinery policy and included a provision for a trading warranty, a provision for the identification of three crewmembers and moorage at Lake Union, Washington, and a provision for the coverage of any LHWCA claims. Dkt. # 10.

On May 11, 2009, Christopher Moore was injured while working on the construction of the Northcoast 125. On April 20, 2010, Northcoast and Yadvish brought suit against Defendants in Pierce County Superior Court, in the case known as *Northcoast Yachts Inc. v. Sea-Mountain Ins. Brokers Inc.*, No. 10-2-08513-6, claiming professional negligence and violation of Washington's Consumer Protection Act. Then on May 6, 2010, Mr. Moore filed a formal LHWCA claim against Northcoast, which Northcoast tendered to Defendants and Plaintiffs on May 7, 2010. After Plaintiffs failed to respond, Northcoast and Yadvish amended their state court complaint on October 10, 2010, to add Plaintiffs, asserting claims of coverage and bad faith. Ultimately, the superior court granted Horton's motion for summary judgment on June 3, 2011, finding that the yacht insurance policy covered Mr. Moore's claim. The superior court later awarded Northcoast and Yadvish $64,431.00 in *Olympic Steamship* fees.

Subsequent to the state court proceedings, Plaintiffs settled with Northcoast and Yadvish in return for Northcoast and Yadvish's agreement to nonsuit and assign their claims against Defendants. Following the settlement, Plaintiffs filed this suit seeking damages from Defendants for material misrepresentation, breach of the duty of utmost good faith, and negligence.

Defendants moved to dismiss, claiming that the Court lacks subject matter jurisdiction because Plaintiffs (1) have not established admiralty jurisdiction, (2) have not established diversity jurisdiction, and (3) have asserted claims that are barred by the *Rooker-Feldman* doctrine.

# III. DISCUSSION

## A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to bring a motion to dismiss asserting a "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). They possess only that power authorized by the United States Constitution and statute, which is not to be expanded by judicial decree. *Id.* The burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction. *Id.* A motion brought under Rule 12(b)(1) may be either facial, where the inquiry is limited to the allegations in the complaint, or factual, where the court may look beyond the pleadings to review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial attack, the court takes all the material allegations of the plaintiff's complaint as true and draws all reasonable inferences in its favor. *Id.* If the court finds that it lacks subject matter jurisdiction, then it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## B. Defendants' Motion to Dismiss

Defendants Horton and OAMPs have facially attacked Plaintiffs complaint on the grounds that Plaintiffs have failed to establish either diversity jurisdiction or admiralty jurisdiction, and the *Rooker-Feldman* doctrine prevents Plaintiffs' claims.

### 1. Admiralty Jurisdiction

Defendants contend that Plaintiffs' insurance contract does not invoke this Court's original jurisdiction over admiralty and maritime cases under 28 U.S.C. § 1333 (2006). A federal court has original jurisdiction over any "civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1) (2006). "Two distinct tests have evolved for determining the reach of this

1  jurisdictional grant: a locality test for tort claims and a subject matter test for contract claims."

2  *Simon v. Intercontinental Transp.*, 882 F.2d 1435, 1440 (9th Cir. 1989). Plaintiffs have made

3  both contract and tort claims. Dkt. ## 1, 10.

4       *a.  Plaintiffs' Contract Claims*

5       Plaintiffs make contractual claims that Defendants violated the duty of utmost good faith

6  and made material misrepresentations when requesting the yacht insurance policy. Plaintiffs

7  argue that the Court has admiralty jurisdiction because their contract claims arise from the

8  issuance of a marine insurance policy.

9       Traditionally, "[a] contract is within admiralty jurisdiction if its subject matter is

10  maritime." *Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1036 (9th Cir. 1984).

11  Maritime insurance contracts of vessels have long been a traditional subject of admiralty

12  jurisdiction. *See id.*; *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).  However, admiralty

13  jurisdiction does not attach simply because a contract is labeled as a "marine insurance policy."

14  *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1025 (9th Cir. 2001).

15       The Supreme Court in *Norfolk Southern Railway Co. v. Kirby* recognized that there are

16  no "clean lines between maritime and nonmaritime contracts" and that the "boundaries of

17  admiralty jurisdiction over contracts . . . have always been difficult to draw." *Norfolk S. Ry. Co.*

18  *v. Kirby*, 543 U.S. 14, 23 (2004) (quoting *Kossick*, 365 U.S. at 735 (internal quotations omitted)).

19  The Court explained that "[t]o ascertain whether a contract is a maritime one, we cannot look to

20  whether a ship or other vessel was involved in the dispute" or focus solely on ""the place of the

21  contract's formation or performance." *Id.* at 23-24. "Rather, the dispositive inquiry must be

22  whether the principle objective of a contract is maritime commerce." *Sentry Select Ins. Co. v.*

23  *Royal Ins. Co. of Am.*, 481 F.3d 1208, 1218 (9th Cir. 2007) (quoting *Norfolk S. Ry. Co.*, 543 U.S.

24  at 25 (internal quotations omitted)). Because the Court's contract analysis focuses on a

1    "conceptual rather than spatial approach," the fact that some of a contract's performance covers

2    actions on land "does not alter the essentially maritime nature of the contract." *Norfolk S. Ry.*

3    *Co.*, 543 U.S. at 24.  Therefore, in order to find admiralty jurisdiction in this case, the Court must

4    find that Plaintiffs yacht insurance policy's "primary objective," regardless of whether it calls for

5    some performance on land, has an "essentially maritime nature" and relates to "maritime

6    commerce." *Id.* at 24-25.

7    　　　　Here it is clear that the yacht insurance policy issued by Plaintiffs was maritime in nature.

8    The policy is a quintessential example of a maritime insurance policy covering a vessel for

9    maritime risks. Dkt. # 10, Ex. A.   The policy specifically identifies itself as a "Hull &

10   Machinery" policy, identifies the vessel covered, specifies a trading area, incorporates multiple

11   Institute Yacht Clauses, and insures against damage due to perils of the sea incurred during

12   navigation. *Id.*  All of these provisions are maritime in nature in that they relate to a ship in its

13   use as such, to navigation on navigable waters, to transportation by sea, and even to the maritime

14   employment of three crew members. *La Reunion Francaise SA*, 247 F.3d at 1026.  In fact, the

15   contract bears significant similarity to the policy in *La Reunion Francaise SA v. Barnes* where

16   the Ninth Circuit previously applied admiralty jurisdiction. *See id.*

17   　　　　Defendant argues that even if the Court finds that the insurance contract was maritime in

18   nature the Court should not assert admiralty jurisdiction because the primary purpose of the

19   vessel was not for use in commerce but rather for use as a pleasure craft. Dkt. # 11.   This

20   construction of admiralty jurisdiction is far too narrow and has been explicitly rejected. *See*

21   *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982) (rejecting a requirement for actual

22   engagement in commercial activity before applying admiralty jurisdiction over the collision of

23   two pleasure craft); *Sisson v. Ruby*, 497 U.S. 358, 362 (rejecting that a requirement of a

24   substantial relationship with commercial maritime activity is necessary for a finding of admiralty

1  jurisdiction and finding admiralty jurisdiction over a fire on a 56-foot pleasure yacht that injured

2  a marina); *Wilburn Boat Company v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955)

3  (applying admiralty jurisdiction over an insurance policy for a small houseboat); *La Reunion*

4  *Francaise SA*, 247 F.3d at 1026 (applying admiralty jurisdiction over an insurance policy

5  covering the theft of a pleasure craft while in dry storage on land).

6       Therefore, due to the maritime nature of the insurance policy, the Court has admiralty

7  jurisdiction over Plaintiffs' contract claims.

8       *b.  Plaintiffs' Tort Claim*

9       Plaintiffs claim in admiralty that defendant OAMPS was negligent because it failed to

10  notify Plaintiffs of any claims, potential claims, or requests for defense or indemnity.  The Court

11  need not address whether Plaintiffs' negligence claim may independently invoke the Court's

12  admiralty jurisdiction because Plaintiffs' tort claim may properly be heard under the Court's

13  supplemental jurisdiction.[1] 28 U.S.C. § 1367(a) (2006).

14  2.  Diversity Jurisdiction

15       Defendants assert that Plaintiffs have not established diversity jurisdiction because

16  Plaintiffs are foreign parties and have named a foreign defendant, and Plaintiffs have not

17  identified the citizenship of each of their members.  The Court need not address this issue

18  because the Court finds that Plaintiffs have established admiralty jurisdiction.[2]

19  _____

20  [1] The Court notes that Plaintiffs' negligence claim is insufficient to invoke admiralty jurisdiction
   alone because the underlying injury did not occur on navigable water and the Northcoast 125
21  was not a "vessel" at the time of the injury. In order for a ship under construction to become a
   "vessel" for purposes of admiralty jurisdiction, the ship must first be "launched" into the water.
22  *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 127 (1919). The
   policy at issue covered the period from January 2009 to January 2010 and the injury occurred in
23  May 2009; but, the ship was not launched until March 2010.

24  [2]  However, the Court notes that by naming a foreign defendant Plaintiffs have destroyed
   complete diversity unless the defect is cured by dismissing the dispensable foreign defendant.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 7

3. *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine prevents this Court from exercising subject matter jurisdiction because Plaintiffs' claims are inextricably intertwined with a state court judgment. The Court disagrees.

The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments. *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 406 U.S. 462, 482-86 (1983)). Thus, federal district courts are precluded from reversing or modifying a state court judgment on the merits where the issues decided in the state court are "inextricably intertwined" with the issues before the federal court. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

This doctrine is "based on the statutory proposition that federal district courts are courts of original, not appellate, jurisdiction. *See* 28 U.S.C. §§ 1331, 1332, [1333]. Therefore, federal courts have 'no authority to review the final determinations of a state court in judicial proceedings.'" *In re Sasson*, 424 F.3d 864, 871 (9th Cir. 2005) (citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)). The *Rooker-Feldman* doctrine precludes federal adjudication of what would amount to a *de facto* appeal or an impermissible collateral attack upon a state court judgment. *Ignacio v. Judges of the U.S. Court of Appeals for the Ninth Circuit*,

---

*Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004); *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989). Furthermore, Plaintiffs have failed to establish diversity because they failed to identify the citizenship of each individual member. This Court adheres to the rule, established in *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990), and adopted by the majority of districts, that Lloyd's syndicates are unincorporated associations; thus, the citizenship of each member must be determined in order to establish diversity jurisdiction. *See Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.*, No. C06-5238 RBL, 2006 WL 1896341, at *1 (W.D. Wash. July 7, 2006); *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.*, No. C03-5131 RBL, 2003 U.S. Dist. LEXIS 26253, at *9 (W.D. Wash. Dec. 4, 2003).

1   453 F.3d 1160, 1165 (9th Cir. 2006).  Application of the doctrine is limited to "cases brought by

2   state court losers complaining of injuries caused by state court judgments rendered before the

3   district court proceedings commenced and inviting district court review and rejection of those

4   judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

5   However, the doctrine does not preclude all overlap between state and federal proceedings. As

6   the Ninth Circuit Court of Appeals has explained,

7         If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a
          state court, and seeks relief from a state court judgment based on that decision,
8         *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the
          other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or
9         omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

10  *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Thus, *Rooker-Feldman* "applies only when

11  the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as

12  her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140

13  (9th Cir. 2004) (emphasis in original).

14         Applying the general formulation from *Noel v. Hall*, the Court concludes that the *Rooker-*

15  *Feldman* doctrine does not apply in this case.  The proceeding in state court determined only that

16  the insurance policy covered Yadvish for claims under the LHWCA. Dkt. # 7, Ex. 3. Whereas,

17  here Plaintiffs are making claims seeking damages from Defendants for material

18  misrepresentation, breach of the duty of utmost good faith, and negligence. Dkt. # 1.

19         Defendants concede that Plaintiffs are not challenging the state court ruling.  However,

20  Defendants claim that Plaintiffs' suit acts as a *defacto* appeal because the remedy involved would

21  allow Plaintiffs to recover from Defendants the amounts that were paid in coverage of the

22  LHWCA claim and *Olympic Steamship* fees. *Id.*  Defendants' argument is unconvincing.  While

23  the amount Plaintiffs may recover for their current claims may effectively offset their costs of

24  coverage the fact remains that the underlying causes of action in the state court proceeding and

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 9

the current case are fundamentally different. In the state court proceeding, Plaintiffs asserted counterclaims against Yadvish and Northcoast, while here Plaintiffs assert claims against Horton and OAMPS.

Because Plaintiffs' claims do not challenge the ruling of the state court they are not defacto appeals; thus, the *Feldman* "inextricably intertwined" test does apply and Plaintiffs claims are not barred by the *Rooker-Feldman* doctrine. *Noel*, 341 F.3d at 1158.

## IV. CONCLUSION

Having considered Defendants' motion, the response and reply thereto, all declarations and attached exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants' Motion to Dismiss (Dkt. # 6) is DENIED;

(2)  The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.

Dated this 10th day of May 2012.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 10